## HENRY BOENIG *vs.* HENRY HORNBERG.

### December 13, 1877.

Division Fences—Land Enclosed and Occupied for Pasture—Liability of Adjacent Occupying Proprietor—Subsequent Abandonment—Gen. St. c. 18 Construed.—Under the provisions of chapter 18, Gen. St., concerning division fences, as well before as since the amendment of March 7, 1873, (c. 99,) whenever the owner of unoccupied lands between which and the enclosed lands of an adjacent occupying proprietor there is a partition fence, which has been theretofore erected by the latter, encloses his own for a pasture, and begins occupying them for that purpose, so that he receives an equal benefit from such partition fence, he becomes liable to pay to the proprietor of such fence one-half the value thereof, to be determined by the fence viewers in the manner prescribed by that chapter, in case such parties disagree as to the amount. A mere subsequent abandonment of such use and occupancy, no statutory steps having been taken to that end, will not relieve from such liability, nor deprive the adjacent proprietor of his right to have the amount of such liability determined by the town supervisors as such fence viewers. The enclosure which is essential to the creation of such liability need not be a legal and sufficient fence within the meaning of section 1 of this chapter.

This case was originally tried in a justice's court, and was brought to recover the value of one-half of a partition fence erected between the lands of the parties. Judgment having been there given for the plaintiff, the defendant appealed to the district court for Winona county. The action was again tried in that court by *Mitchell*, J., without a jury. The court found that the plaintiff built the fence in question in 1868,

and that the defendant enclosed his land in June, 1873; that the fence built by defendant in enclosing his land was not a lawful fence within the meaning of section 1, c. 18, Gen. St.; and that during the succeeding fall and winter, before proceedings were taken by plaintiff to have the division fence divided or appraised, the aforesaid fence enclosing the defendant's land was allowed to fall down, so that the land was no longer enclosed; that the said premises had ever since been unenclosed and unoccupied, and allowed to lie out as commons by defendant, but that said defendant gave no notice thereof as provided by section 19, c. 18, Gen. St. Upon these facts the court further found, as conclusions of law, that the liability to pay for one-half of the partition fence attached immediately upon the enclosing of the adjacent land, and that said liability could not be defeated by any subsequent abandonment of the occupancy of the land, and by throwing the same out to commons, until defendant had at least proceeded according to section 19, c. 18, Gen. St. Judgment was therefore entered for plaintiff, and from this judgment defendant appealed.

*J. W. Dyckson* and *C. H. Myers*, for appellant, argued that the obligation to build partition fences was entirely statutory, (*Holladay* v. *Marsh*, 3 Wend. 142; *Rust* v. *Low*, 6 Mass. 94;) and that therefore the supervisors had no power to act unless the lands of the owners or occupants of adjoining premises came clearly within the provisions of the statute, (*Bechtel* v. *Neilson*, 19 Wis. 59,) and that in any event the plaintiff had lost his remedy by neglecting to commence proceedings while the defendant's lands were enclosed. *Smith* v. *Drew*, 5 Mass. 513; *Lease* v. *Vance*, 28 Iowa, 509.

*C. H. Berry*, for respondent, contended that the right of the plaintiff to recover became absolute when the defendant enclosed his land, and could not be defeated by anything less than formal action under the statute to throw it open. *Field* v. *Proprietors, etc.*, 1 Cush. 11.

CORNELL, J. This action was brought to recover the value

of one moiety of a partition fence erected by plaintiff on the line between him and the defendant, as regularly ascertained and awarded by the fence viewers under section 15, *c.* 18, Gen. St. This section provides that "when any unenclosed grounds are afterwards enclosed the owner or occupant thereof shall pay one-half of each partition fence standing upon the line between his land and the enclosure of any other owner or occupant, and the value thereof shall be ascertained by a majority of the supervisors of the town, in writing, under their hands, in case the parties do not agree. And if such owner or occupant neglects or refuses, for sixty days after the value has been so ascertained and demand made, to pay for one-half of such partition fence, the proprietor of such fence may maintain a civil action for such value and the cost of ascertaining the same."

It is claimed by appellant that this section has no application to his case, because the "enclosed grounds," which he afterwards enclosed, were never occupied by him for any purpose except pasturage. The further claim is also urged that the fence viewers had no jurisdiction in the matter, because— *First*, the fence which enclosed defendant's lands was not a lawful fence within the meaning of section 1 of said chapter; and, *second*, he had ceased to occupy the same, even for the purpose of a pasture, for more than ten months prior to the proceedings which resulted in the award.

The first of these objections is based upon section 2 of the chapter which provides that "the respective occupants of lands, enclosed with fences, shall keep up and maintain partition fences between their own and the next adjoining enclosures, in equal shares, so long as both parties continue to improve the same." It is contended that the same kind of enclosure and occupancy which is recognized by this section as sufficient to impose the duty of maintaining one moiety of a partition fence, is essential to the existence of the right given by the provisions of section 15; and as, by the terms of section 2, the obligation therein contemplated only arises and continues

when and "so long as both parties continue to improve their lands," the appellant never became liable under the provisions of section 15, because he never improved the lands which he "afterwards enclosed," but only used them for pasturage. In our opinion the word "improve," as used in this statute, was not employed in the sense of "cultivate." Among the definitions of this word, as given by Webster, we find the following: "To use or employ to good purpose;" "To make productive;" "To turn to profitable account;" "To use for advantage;" "To use;" "To occupy;" "To cultivate."

A fence itself is a valuable improvement upon a farm, inasmuch as it facilitates its beneficial and convenient use and enjoyment. The obvious purpose of the statute was to compel every owner of land lying adjacent to the enclosed fields of another, to contribute equally with his adjacent proprietor to the erection and maintenance of the partition fence between them, whenever, by the enclosure and occupancy of his own for any private and useful purpose, he derives from such division fence a like benefit and advantage as his adjoining proprietor. It is immaterial, therefore, whether he pastures or crops his lands. He derives a like benefit from the fence in either case. He occupies and improves within the meaning of the statute. In our view the act of March 7, 1873, (c. 99,) making the provisions of this chapter of the general statutes applicable in terms to "the occupants of lands enclosed with fences, for the purpose of pasturage," in no way enlarged the scope of such provisions. It only made verbally definite, perhaps, what was before sufficiently explicit in substance and effect.

Upon the facts as found by the court below the defendant first enclosed his lands and made use of the partition fence theretofore erected by the plaintiff on the line between them in 1873, and thereupon commenced occupying and using his lands so enclosed for pasturage for the benefit of himself and his tenants. His liability to contribute his share for one moiety of such fence attached at that time. It is not

claimed that he ever subsequently took any steps under the statute toward throwing open his lands again to the public use as commons, or that he even gave any notice of his determination to discontinue the improvement thereof. The fence viewers, therefore, had full jurisdiction to entertain the proceedings at the time they did, and there being no pretence of any irregularity on their part, their award is binding in the premises.

The fact that the enclosure built by the defendant around his lands did not answer the requirements of section 1 of this chapter, as to legal and sufficient fences, is wholly irrelevant to any question involved in this case.

Judgment affirmed.