PAUL BROM v. DONALD KALMES.

230 N. W. 2d 69.

May 23, 1975—No. 45078.

*Gerald Lyndon McManus*, for appellant.

*Streater, Murphy, Brosnahan & Langford* and *Leo F. Murphy, Jr.*, for respondent.

Heard before Todd, Scott, and Knutson, JJ., and considered and decided by the court en banc.

KNUTSON, JUSTICE.*

Appeal from a judgment of the Winona County District Court in an action arising out of a line fence dispute. Appellant sued

---

*Retired Chief Justice acting pursuant to Minn. St. 2.724.

to collect a sum awarded by the fence viewers;[1] respondent counterclaimed for trespass and destruction of trees on his property. The jury returned a verdict in respondent's favor and the court ordered judgment accordingly. After denial of the usual blended motions, this appeal was taken.

The parties own adjoining land in Norton Township, Winona County. It does not appear from the record that, prior to appellant's effort to fence his property, either property was enclosed. Appellant built a fence on the boundary line between the adjoining properties and around the area he had recently purchased. In doing so, appellant crossed onto respondent's land and cut down a number of trees which he considered to be threatening to the fence.

Appellant then billed respondent for half the costs of the line fence. Numerous overdue notices not being answered, appellant asked the Norton Township fence viewers to examine the fence and to issue a certificate apportioning costs. This was done to appellant's satisfaction; respondent was notified, but did not pay.

Appellant commenced this action in district court to recover the amount awarded. The jury returned a special verdict which was adopted by the trial judge. The jury found that neither parties' land was, prior to erection of the fence, in whole or in part improved and used; that appellant had cut respondent's trees without authority; that the standing timber value of the trees in question was $250; and that respondent was not entitled to treble damages.

We understand this appeal to turn on the question of use and improvement and the question of appellant's rights in construction of the disputed fence. We find no error.

---

[1] Minn. St. 344.01: "Supervisors in their respective towns, aldermen of cities in their respective wards, the commissioner of public works in cities having a commission form of government, and statutory city trustees in their respective cities shall be fence viewers." This present statute differs slightly from the former statute due to revision pursuant to L. 1973, c. 123, art. 5, § 7.

■ The cause was tried and submitted[2] on the assumption, correct in our view, that Minn. St. 344.03, subd. 1,[3] controls. Appellant mistakenly contends that Minn. St. 344.13[4] should have been submitted. Generally, that section applies only to situations where the unenclosed lands of one owner are afterwards enclosed, in the process making use of the line fence previously existing as part of the other owner's enclosure. See, Boening v. Hornberg, 24 Minn. 307 (1877).

In this case, however, neither party's land was enclosed prior to the construction of appellant's fence, and the lower court correctly applied only § 344.03, subd. 1.[5]

---

[2] "THE COURT: I think I am going to submit a question to the jury of whether the land of either of these parties in 1970 was improved or used in whole or in part, and insofar as Mr. McManus' claim, I think that is the only question I am going to submit to the jury. Do you agree with that?

"MR. McMANUS [counsel for plaintiff]: I will agree with that."

The case was so submitted.

[3] "The adjoining owners or occupants of lands in this state when the land of one or both of the owners is, in whole or in part, improved and used, and one or both of the owners desires his or their land to be in whole or in part, fenced, shall build and maintain the partition fence between their lands in equal shares."

[4] "When unenclosed lands are afterwards enclosed, the owner or occupant thereof shall pay one-half of the value of each partition fence extending upon the line between his land and the enclosure of any other owner or occupant. In case the parties do not agree, such value shall be ascertained by the fence viewers and stated, in writing under their hands; and, if such owner or occupant fails to make such payment within 60 days after the value is so ascertained and a demand made, the owner of such fence may recover such value and the cost of ascertaining the same in a civil action."

[5] The record indicates that the trial court considered § 344.03, subd. 1, to be a condition precedent to application of the other provisions of c. 344. That question is not squarely before us and we offer no opinion on it. See, Rev. Stat. (Terr.) 1851, c. 11, § 15; G. S. 1866, c. 18, § 2; L. 1915, c. 173, § 1; Boenig v. Hornberg, 24 Minn. 307 (1877). Compare, Minn. St. 344.03, subd. 1, and 344.13.

We do take notice that § 344.03, subd. 1, provides no explicit method

Appellant contends that Boenig requires a different result since, like the present matter, Boenig was concerned with land allegedly used as pasturage. As we understand the argument, because Boenig held that pasturage constitutes an improvement of land, the same result should follow here.

Boenig is clearly distinguishable. There the plaintiff's land was first enclosed. The defendant then enclosed his lands, taking advantage of the fence already separating the properties. Turning to the antecedent of § 344.13, G. S. 1866, c. 18, § 15, plaintiff, after following the statutory procedure, brought action to recover the amount the viewers had determined was defendant's share of the cost of the fence between the parties' lands. The defendant's answer alleged, among other things, that he was not obligated to pay because his lands were not improved.[6] He asserted that they were only pasturage. Reasoning by analogy and for internal statutory consistency, we held that the defendant

by which to enforce its mandate, as does § 344.13. In this case, the fence viewers acted on the authority of § 344.09; that section only hints at an aggrieved party's ability to obtain legal recourse.

Until we are persuaded otherwise or until the legislature acts to clarify c. 344, we believe that the procedures followed herein should suffice. We suggest that even in situations not calling for application of § 344.-13, that section describes appropriate steps to be followed in the event a civil action is necessary to enforce the decision of the fence viewers. See, also, 35 Am. Jur. 2d, Fences, § 23; 36A C. J. S., Fences, §§ 11 and 12.

We invite the legislature's attention to c. 344, particularly to the procedural difficulty alluded to and to potential inequities we detect in § 344.03, subd. 1.

[6] "Improvement" was an issue because G. S. 1866, c. 18, § 15, had to be read in light of G. S. 1866, c. 18, § 2: "The respective occupants of lands, inclosed with fences, shall keep up and maintain partition fences between their own and the next adjoining inclosures, in equal shares, so long as both parties continue to improve the same."

This provision was amended in 1913 by inserting "owners or" before "occupants" and deleting the phrase, "so long as both parties continue to improve the same." L. 1913, c. 525, § 1. It was further amended in 1915 to contain the language presently found in Minn. St. 344.03, subd. 1. L. 1915, c. 173, § 1.

occupied and improved his lands within the meaning of the statute.

Whether land or a part thereof is used as pasturage, a use which we agree constitutes an "improvement," must ordinarily be a question of fact. Having carefully reviewed the record, we are of the opinion that the jury was entitled to find that neither party's land was, in whole or in part, improved and used as pasturage and thus was not within the purview of § 344.03, subd. 1.

Appellant owned cattle, but there is no showing made that his cattle were pasturing on his land at the time the fence was constructed. There is an indication that some cattle had been on appellant's land prior to his purchase of it and that some of the land in question could be classified as pasturage, although most of the land was steep, rough, stony, wooded, and not generally acceptable as pasturage.

This is not to say that some of the land might not have been capable of use as pasturage, nor that appellant's predecessor in interest did not so use it, nor that appellant did not pasture cattle on any part of his land after the fence was erected. We only say that, on the whole, the record supports the verdict and does not affirmatively establish, as it must, that any of the land, respondent's[7] or appellant's, was at least partly used and improved for any purpose at the time of the erection of the fence.[8]

■ Appellant argues that one who builds a partition fence is privileged to enter upon adjoining lands at reasonable times and in a reasonable manner in order to build or to repair the

---

[7] The parties have chosen not to argue the relevance, if any, of respondent's seeming to have lived on his part of the land in question. We choose not to address ourselves to the issue. 1B Dunnell, Dig. (3 ed.) § 425a.

[8] We look to the use and improvement at the time of the erection because the statute permits construction and recompense for building the fense only " *when* the land of one or both of the owners *is*, in whole or in part, improved *and used* * * *." (Italics supplied.) Cf. Boenig v. Hornberg, *supra*.

partition fence.[9] We need not reach question of reasonableness because, as we see things, the fence here involved was only a division fence and was not a partition fence. This is so because the fence was not built at such time and place, under the statute, to permit the builder of it to burden his neighbor with part of its costs, including the costs of trespass. As a result, there was no privilege. See, 36A C. J. S., Fences, §§ 2, 5. Moreover, the issue of consent was properly submitted by the trial court and the jury was entitled, in light of the evidence, to find that there was no authority conferred by consent, express or implied, to permit appellant's entry upon respondent's land, and that because of appellant's trespass, respondent was damaged in the sum of $250. See, Meixner v. Buecksler, 216 Minn. 586, 13 N. W. 2d 754 (1944).

■ On the issue of consent, as well as on the issue of whether appellant's property was improved and used as required by the applicable statute, respondent prevailed. It is axiomatic that we must view the evidence in the light most favorable to the prevailing party, and that if the evidence as a whole supports the verdict, the verdict must stand. We have closely studied the evidence and have examined the allegations of error made. The trial court properly ordered judgment on the verdict.

Affirmed.

---

[9] See, 35 Am. Jur. 2d, Fences, § 12; Restatement, Torts 2d, § 190.