**Peter H. LANPHER, et al., Respondents,**

v.

**Jay T. NYGARD, Appellant,**

**Kendall M. Nygard, Defendant.**

**No. A12–1419.**

Court of Appeals of Minnesota.

April 22, 2013.

440

Mark A. Lund, James A. Heuer, Jr., Heuer, Lund & Flores, P.A., Minneapolis, MN, for respondents.

Jay T. Nygard, Orono, MN, pro se appellant.

Considered and decided by HOOTEN, Presiding Judge; CLEARY, Judge; and SMITH, Judge.

## OPINION

HOOTEN, Judge.

Appellant argues that the district court erred by holding that a fence that is located on respondents' property but that runs along the property line with appellant's property, is not a partition fence. Appellant further argues that, because the fence is a partition fence, applicable law affords him the legal right to unilaterally paint and repair the fence without respondents' consent or knowledge. Because appellant failed to show that the fence at issue is a partition fence or that he complied with the requirements of the partition fence statute, we affirm.

## FACTS

The parties own adjoining properties in Orono, Minnesota. A fence separates the properties and is located entirely on property owned by respondents Peter H. Lanpher and Penny A. Rogers, although, at one point it is located only three inches from the property line. The fence is made out of natural cedar, but appellant Jay T. Nygard testified that the fence was in disrepair, was "a rotted gray color," and had mold growing on it. Appellant's wife testified that she experienced allergic reactions to mold on the fence.

Appellant testified that he attempted to contact "fence viewers"[1] from the city of Orono, but was told that the city "didn't know what they were." In July 2011, after appellant was unable to obtain assistance from the city regarding his complaints about respondents' fence, he hired a friend to paint the fence, put in screws in several spots, and reinforce a post so that it would not fall over. Appellant never advised, or sought permission from, respondents about these activities. When respondents learned that their fence had been painted and repaired, they sent appellant a letter stating that they believed he trespassed on their property and that it would cost $5,071.86 to return the fence to its unpainted state. In addition, respondents advised appellant that they did not want any "verbal, physical[,] or written contact" with him or his wife. Despite the letter, appellant had the fence painted again in September 2011. Appellant testified that he believed this second painting was permissible because respondents had not properly maintained the fence under city code, and because the painting was done "in order to keep the fence from falling on to my property, in order to keep my wife from getting

---

1. The "fence viewers," as defined in Minn. Stat. § 344.01, is a body that handles fence disputes and comprised of local supervisors, city council members, commissioners, or trustees, depending on the type of municipality in which the land exists.

sick from the mold, [and] to basically improve the value of both of our properties."

Respondents filed a conciliation court claim for $5,071.86, plus costs, for their claimed damages to restore the fence to its natural condition. In response, appellant filed a counterclaim for $920, plus costs, for his expenses in painting and repairing the fence. The conciliation court awarded respondents $2,000, plus costs of $70, but that judgment was vacated when appellant filed a demand for removal and appeal to the district court. Following a bench trial, the district court found that appellant "decided to remedy what [he] believed to be disrepair and mold by painting a fence that did not belong to [him]." The district court concluded that the fence is not a partition or common fence and that the partition fence statute does not apply because the fence is entirely on respondents' property. As a result, the district court ordered judgment for respondents for $5,071.86, plus costs, which was the full amount of respondents' claimed damages.

### ISSUE

Does the partition fence statute, Minn. Stat. §§ 344.01–.20, provide a legal basis for appellant to unilaterally paint and repair respondents' fence without their consent?

### ANALYSIS

Appellant argues that the district court erred as a matter of law in finding that the fence is not a partition fence, a status which, appellant believes, would allow him to repair the fence and seek contribution from respondents for his costs. Respondents argue that the fence is not a partition fence, and that the partition fence statute is inapplicable and does not excuse what would otherwise be vandalism of their property.

"Statutory interpretation is a question of law that we review de novo." *Rice v. Kringler*, 517 N.W.2d 606, 608 (Minn.App. 1994). "Findings of the trial court must be affirmed unless clearly erroneous." *Miles v. Althoff*, 373 N.W.2d 655, 657 (Minn.App.1985), *review denied* (Minn. Nov. 1, 1985); Minn. R. Civ. P. 52.01.

A "partition fence" is a fence used to separate adjoining property. Minn.Stat. § 344.01–.20. Only fences meeting specific requirements for height, distance between posts, and density of barbs for barbed wire fences are partition fences, though other fences may be sufficient if they "are considered by the fence viewers as equivalent to any of the fences listed in this subdivision." Minn.Stat. § 344.02, subd. 1(e). The partition fence statute allows, for land that is "improved and used," one or both of the owners of adjoining land to "build and maintain a partition fence between their lands in equal shares." Minn.Stat. § 344.03, subd. 1. However, a pre-existing fence located on or near the property line may also be designated as a partition fence by the fence viewers. *See* Minn.Stat. §§ 344.02, subd. 1(e) (allowing a fence that does not meet the other fence construction categories to be considered a partition fence by the fence viewers); 344.06 (allowing, when "a controversy arises concerning the rights in partition fences of the respective occupants or their obligation to maintain the fences," the fence viewers to assign each property owner a share of the fence for repair or erection); *McClay v. Clark*, 42 Minn. 363, 364, 44 N.W. 255, 255 (1890) (noting that the parties were owners of adjoining land, "separated by a division fence" that both parties used and benefitted from, and which "thus served as a partition fence between their lands").

When there are disputes about whether a fence has been properly maintained,

what type of fence to build, or where to locate the fence in reference to bodies of water that may exist along the property lines, a body comprised of local supervisors, city council members, commissioners, or trustees, known as "fence viewers" can provide a resolution. Minn.Stat. §§ 344.02, subd. 2 (requiring fence viewers to "determine what kind of fence should be built on the line and order it built" when the parties disagree about the kind of fence to be built); 344.04 (empowering fence viewers to "determine that an existing fence is insufficient or a new fence is necessary"); 344.10 (allowing fence viewers to "determine that it is impracticable, without unreasonable expense, for a partition fence to be made on the waters at the true boundary line" and determine "on which side of the stream or pond the fence must be erected and maintained"). When one party "fails to build, repair, or rebuild a partition fence," the fence viewers may order the failing party to undertake that action or the other party may recover double their costs of performing the work. Minn.Stat. §§ 344.04–.05.

■ Appellant first challenges the district court's conclusion that the fence is not a partition fence because it is wholly on respondents' property. The statute clearly presumes that a partition fence will be placed on the property line, but the statute indicates that in certain situations—specifically, where a stream or pond makes it "impracticable, without unreasonable expense"—the fence can be built off of the property line. Minn.Stat. § 344.10. Moreover, the parties with adjoining property may "agree upon [a location] as such dividing line, and as the place where the partition fence should be built," and "are estopped to deny that it is a partition fence" when such agreement is evident. *Oxborough v. Boesser,* 30 Minn. 1, 3, 13 N.W. 906, 907 (1882). Thus, appellant is

correct that the partition fence statute and relevant caselaw do not strictly require partition fences to be located on the property line, though the general rule is that "a fence built by a person on his or her own land and claimed by him or her and his or her grantees as theirs exclusively is not a division or partition fence recognized by the statute." 36A C.J.S. *Fences* § 5 (2003). Despite that general rule, we decline to adopt the district court's conclusion that this fence is not a partition fence solely because of the fence's location.

■ Rather, we conclude that the partition fence statute does not justify appellant's actions for two other reasons. First, there is no indication that either party has done anything to cause this fence to be a partition fence. For example, there is no indication that fence viewers approved this particular fence as a partition fence, which would be necessary because the fence is plainly not one of the statutorily enumerated varieties of partition fences. *See* Minn.Stat. § 344.02, subd. 1(a)–(d). There are also no indications that fence viewers ordered the parties to build or maintain the fence, found the fence to be deficient and ordered its repair, or assigned a share of the fence to appellant to be repaired. Minn.Stat. §§ 344.04, .06. Further, fence viewers have not "decide[d] that either occupant has voluntarily erected or otherwise become the proprietor of more than that occupant's just share of the fence before a complaint was made," such that they could order the party contributing less to "pay for the share of the fence assigned to the other to repair and maintain." Minn.Stat. § 344.09. Ultimately, if the "fence was not built at such time and place, under the statute, to permit the builder of it to burden his neighbor with part of its costs," that fence is not a "partition fence." *Brom v. Kalmes,* 304 Minn. 244, 250, 230 N.W.2d

69, 74 (1975); *see also* 36A C.J.S. *Fences* § 23 (2003) ("Although a fence actually exists between adjacent lands, it will become a partition fence[ ] and the obligations and rights of the adjacent owners ... will arise only on its being made a partition fence by agreement, or by proceeding in the manner prescribed by the statute[.]").

■ There is no support for the assertion that appellant can unilaterally deem a fence to be a jointly owned and controlled partition fence when it is wholly on a neighbor's property and was not constructed as, or converted into, a partition fence according to statute. There are only a few cases that discuss the application of the partition fence statute, but these cases do not specify how the fences became partition fences or involve disputes about whether the partition fence law applies. *See Rice*, 517 N.W.2d at 607–08 (noting that one party told the other "that the fence separating the adjoining properties needed to be replaced," and applying the partition fence law); *Miles*, 373 N.W.2d at 656–57 (noting that the parties owned adjoining property with a "boundary line fence," and applying the partition fence law); *McClay*, 42 Minn. at 364, 44 N.W. at 255 (noting that "both parties ha[d] the use and benefit of such division fence, which thus served as a partition fence between their lands"). More importantly, regardless of how the fence in each case came to be deemed a partition fence, each case involves a party who sought relief under the partition fence statute, a distinguishing point from the instant case.

■ Second, there is no independent right of repair in the partition fence statute. To the extent that unilateral repair is contemplated, the statute only allows such repair when fence viewers deem it necessary and have followed the specific statutory procedures for notifying the parties and allowing the repair of the fence by the party that is required to do so. *See Rice*, 517 N.W.2d at 608 (reversing a district court's order that one party must pay repair costs because that party was not given proper notice of the fence viewers' visit under the statute); 36A C.J.S. *Fences* § 26 (2003) ("Before a duty to build, maintain, or repair a partition fence can arise under such a statute, there must be a compliance with the conditions imposed thereby."). Appellant argues that he attempted to contact fence viewers for the city of Orono, but was rebuffed because the city "didn't want anything to do with it" and did not "want[ ] to participate." Apparently because of this lack of response, appellant took it upon himself to repair the fence. But nothing in the partition fence statute allows such unilateral action.

Appellant's self-help remedy is disfavored in part because there are other legal options through which appellant can address concerns about his neighbors' fence. Further, appellant could have sought to force the city of Orono to perform what appears to be a non-discretionary duty to have fence viewers view the fence. *See* Minn.Stat. § 344.17 ("A fence viewer who unreasonably fails to perform a duty required by this chapter shall forfeit $5 to the town or city and be liable to the injured party for all resulting damages."). However, neither of these other legal remedies nor anything in the partition fence law allows appellant to take unilateral action without complying with applicable legal procedures first.

## DECISION

Because appellant failed to show that respondents' fence is a partition fence within the meaning of the partition fence statute, and because appellant has no independent right to repair respondents' fence

even if it were a partition fence, the district court's judgment is not erroneous.

**Affirmed.**