FRED DAVIS v. BOARD OF COUNTY COMMISSIONERS OF ST. LOUIS COUNTY.[1]

June 26, 1896.

Nos. 10,068—(264).

**Constitution—Laws 1895, c. 249—Due Process of Law.**

Chapter 249 of the Laws of 1895, providing for the location of section and quarter section corners by the county surveyor on the application of the resident owners of the section, is unconstitutional, for the reason that it deprives the landowners of their property without due process of law.

Appeal by plaintiff from an order of the district court for St. Louis county, Ensign and Morris, JJ., sustaining a demurrer to the complaint. Affirmed.

*O. W. Baldwin*, for appellant.

*Phelps, Towne & Harris*, for respondent.

START, C. J.    This is an action by the plaintiff, who is county surveyor of the defendant county, to recover from the defendant the

1 Reported in 67 N. W. 997.

sum of $108 for establishing the section corners of a certain section of land in the county under the provisions of chapter 249, Laws 1895. The defendant demurred to the complaint, and the plaintiff appeals from an order sustaining the demurrer.    The principal question for our decision is the constitutionality of the statute under which the services in question were rendered.    The material provisions of the statute are these:

"Section 1. Whenever a majority of the resident land owners, in any government section in this state, wish the corners of the said section permanently marked, and the sub-divisional lines definitely located and the notes of the same duly recorded in the record books of the surveyor's office of the county; they shall, after giving at least ten (10) days' notice to each of the resident land owners of such intention, notify the county surveyor that they wish to have the section subdivided, the corners permanently marked and the notes of the same recorded.

"Sec. 2. The surveyor shall at his earliest convenience set a time when he will make such survey, and at the appointed time he, or one of his deputies shall appear and proceed to make such survey, according to the laws now made and provided for the subdivision of sections, provided that all the section corners of said section can be proven."

"Sec. 7. The cost of the survey shall be divided and paid in the following manner:    The surveyor shall keep a careful account of the work done on the several parts of the section, and of the help furnished, and at the conclusion of the work apportion the costs in as equitable a manner as possible, for the relocation of a section corner to the four (4) sections adjacent and for the subdivision of the section to each subdivision, according to the costs and the benefits received.

"Sec. 8. The surveyor shall file with the county auditor a certificate of the costs of making such survey and the apportionment to each section and sub-divisional parts of the section, who shall assess the same against the property as other taxes, and a bill for the whole amount due the surveyor shall be audited and paid by the commissioners out of the general funds of the county."

It is manifest that the purpose of this statute is to enable a resident of any portion of a section of land to secure the location and marking of the section corners, and to compel all other owners of the four sections adjacent to contribute equitably to the expenses thereof, by apportioning the amount of them to, and assessing it upon the land of, each.    This is the single purpose of the act, and if its provisions to secure such result are unconstitutional the whole statute fails; for, clearly, the legislature would not have provided for the

advancement of such expenses from the county treasury if it had understood that the provisions for the apportionment of the expenses to the land benefited, and for indemnity to the county for such advancement, were void.    O'Brien v. Krenz, 36 Minn. 136, 30 N. W. 458;   Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513.

1. It is claimed by the plaintiff that the validity of the statute may be sustained on the ground that it is an exercise of the power of taxation.    Clearly, the claim is untenable.    The exhaustive brief of counsel for the plaintiff in support of his proposition seems to be based upon a misconception of the provisions of the statute.

The purpose of the statute is, as we have suggested, private;   that is, to provide the legal machinery whereby the majority of the owners of a section of land may compel, at their pleasure, other owners in the same and adjacent sections to contribute to the expenses of locating the section corners.    This is a purpose for which taxes cannot be levied.    The act does not, as claimed by plaintiff, provide for taxing districts, and for a uniform tax based on a cash valuation of the land in each section.    The expense of locating the corners is to be apportioned to the adjacent sections, not on the basis of their value, but on the basis of benefits received.    This, if anything, is an attempted local assessment for a local improvement.    That this is so, in its last analysis, no matter on what basis the county auditor divides and assigns the total burden resting on a section to the several subdivisions thereof, becomes apparent in cases where one man owns the whole of one of the adjacent sections which is assessed as one parcel.    This statute does not provide for a local assessment. Only municipal corporations can be authorized to levy assessments for local improvements.    State Const. art. 9, § 1;   State v. District Court of Hennepin Co., 33 Minn. 235, 22 N. W. 625.    But, as was incisively said by the learned trial judges:

"In the act in question the power to levy the tax or assessment is not delegated to any municipal corporation.    Neither county, city, nor town has any duty or power in determining the necessity of the tax, or that it is for a public purpose.    The legislature does not determine that a public purpose or necessity demands such tax. * * * The power to tax a man's land rests upon the mere wish of two or more resident landowners, who need not even be citizens of the state. No necessity need exist for the action.    None need be pretended."

2. The main reliance of the plaintiff in support of his claim that this act is constitutional is that it is within the police power of the state, and a proper exercise thereof by the legislature. We are of the opinion that laws regulating the locating of the boundaries, and fixing permanent monuments to mark them, between landowners, and providing for some public officer or special tribunal to ascertain the cost of the work, and apportion the amount thereof to the respective owners benefited thereby, and for collecting the same, are in the nature of police regulations. And if the procedure provided for determining the liability of such landowners, and enforcing the same, constitutes due process of law, such laws are unquestionably a valid exercise of legislative power. Coster v. Tide Water Co., 18 N. J. Eq. 54. Such laws, in principle, are similar to laws regulating partition fences, the constitutionality of which cannot be questioned, where provision is made for notice to the landowners, and opportunity to be heard. Such notice is essential to the validity of the proceedings. McClay v. Clark, 42 Minn. 363, 44 N. W. 255; Myers v. Dodd, 9 Ind. 290, 68 Am. Dec. 624, note, 626–633; 7 Am. & Eng. Enc. Law, 896. But the vice in the statute in question is that the procedure for locating the boundary lines, marking them by monuments, apportioning the cost to the property benefited, and enforcing payment thereof, is not "due process of law."

The proceedings authorized by the statute are not simply administrative, like tax proceedings to secure a proper revenue for the support of the government, but they are judicial in their nature; hence decisions of this and other courts as to what constitutes "due process of law" in tax proceedings are not in point. It is not practicable to define the term "due process of law." The general principles for determining in particular cases whether the procedure provided by the statute is or is not due process of law are stated in the case of Bardwell v. Collins, 44 Minn. 97, 46 N. W. 315. See same case, and notes, 20 Am. St. Rep. 547, 554. It is only necessary here to repeat that in proceedings of a judicial nature, affecting the property rights of the citizen, due process of law requires notice to him, and an opportunity to be heard; and a statute affecting such rights, which is not enforceable in the usual modes established with respect to kindred matters according to the course of the common law, is open to the charge of depriving a party of his property without due process of law.

The statute in question does not provide for notice, actual or constructive, to any of the landowners, of the time when the work is to be done, and the cost apportioned to the several parcels of land benefited. It does provide that the parties shall, after giving at least ten days' notice to resident landowners of an intention to have the section corners located and marked, notify the county surveyor of their wish in the premises, who thereafter sets a time for the making of the survey. Notice of this time is not required to be given to any one. So far as nonresident landowners are concerned, there is no provision for notice to them of any kind. Again, the mode of enforcing the obligation of a landowner to contribute his share of the cost of the work is not the usual one established with respect to kindred matters according to the course of the common law. Under the provisions of this statute, the obligation of the landowner, whether a resident or nonresident, to contribute to the expense of the work, may be established, apportioned, and enforced by an arbitrary sale of his land, without any notice or hearing whatever.

As already suggested, the statute is not the exercise of the taxing power of the state, and the usual methods of enforcing taxes are not the established modes of enforcing the obligation of the several landowners to contribute to the cost of the work in proportion to benefits received, according to the course of the common law. The statute undertakes to relieve private parties from the burden of enforcing the obligations by ordinary judicial procedure, by requiring the auditor to enforce it by the legal machinery for the collection of taxes, and the county commissioners to anticipate the collection by advancing the cost of the work out of the general funds of the county.

A comparison of the provisions of this statute with those of the kindred statute relating to line fences will set the arbitrary provisions of the former in a clearer light. In the case of partition fences, one party cannot arbitrarily determine for himself the necessity of repairing or rebuilding the fence, but after notice to each party the supervisors determine the question, and if they direct it to be done they fix the time for performance, and if the party neglects to build or repair his part of the fence within the time limited the opposite party may do so. The supervisors then judge as to its sufficiency, ascertain the value thereof, and give a certificate therefor, including their fees. Provision is made for enforcing payment of double the

amount of the certificate by civil actions. G. S. 1894, §§ 2057, 2058. If we eliminate from this partition fence statute all provisions for notice to the parties, and for hearing and deciding the question of the necessity for the work by a disinterested tribunal, and add to it a provision that the party building the fence may present his certificate to the county auditor, who must assess the amount thereof as a tax on the land of the opposite party, and that the county commissioners must pay the amount of the certificate to the holder thereof, we should have substantially the arbitrary provisions of the statute in question.

We hold the statute to be unconstitutional, for the reason that it deprives the landowners of their property without due process of law.

3. The plaintiff further claims that he is entitled to his pay for his work from the county, even if the statute is void. Our opinion is otherwise. The work was not done for the county, or pursuant to any contract, express or implied, with it. The case of Raymond v. County Commrs. Stearns, 18 Minn. 40 (60), relied on by the plaintiff, is not in point; for in that case the legislature, by a valid statute, authorized and directed the plaintiff to locate and survey a state road through the county at the expense of the county. There is no element of estoppel in the case at bar, as against the county.

Order sustaining demurrer affirmed.