Sayre, J.
This is an action for injunction to prevent the trustees of Wilkesville township, Vinton county, from proceeding in accordance with Section 5908 et seq., General Code, 'to compel the plaintiff to build or pay in taxes for the building of a partition fence.
Before its last amendment Section 5908, General Code (then Section 4239, Revised Statutes), read in part:
■ “The owner # * * . of land, adjoining a fence, of whatsoever material constructed, in all respects such as a good husbandman ought to keep, erected by the owner * * * on the line of his land, who makes or causes to be made an inclosure, adjoining such fence so that such fence answers the purpose of inclosing his land, shall pay * *
The decision in Kingman v. Williams, 50 Ohio St., 722, rests upon the statute just quoted, as it read *396 in 1893. But except as a matter of history Kingman v. Williams is of no consequence now, because by the amendment of April 18, 1904 (97 O. L., 138), the statute was changed to read as it does now:
“The owners of adjoining lands shall build, keep up and maintain in good repair all partition fences between them in equal shares, unless otherwise agreed upon between them which agreement must be in writing *' #
The decision in the case of Alma Coal Co. v. Cozad, Treas., 79 Ohio St., 348, holds that such act “may not be so construed and administered as to charge an owner of lands which are, and are to remain, unenclosed, with any . part of the expense of constructing and maintaining a line fence for the sole benefit of the adjoining proprietor.”
This decision has given rise to much confusion and discussion. It was admitted by the demurrer in that case that the lands of the plaintiff were “wild, uncultivated and unfenced^and that it [the plaintiff] has ho desire or intention to improve, fence or culti • vate any portion thereof, and that said fence is of no value or benefit to it whatever.”
What has caused the confusion, perhaps, is the statement of the law in the second paragraph of the syllabus in the Cozad case that if the lands are, and are to remain, unenclosed, then the owner cannot be lawfully charged with the expense of constructing . and’maintaining a partition fence. Was the matter of enclosure alone to determine whether an owner could be charged with the expense of such construction? If so, the amendment of 1904 was a nullity. That amendment leaves out the matter of enclosure and requires the adjoining owner to keep up and maintain- partition fences under all circumstances except in case of an agreement.
*397 The matter is further complicated by two decisions rendered subsequent to the Gozad case. In Roth et al., Trustees, v. Beech, 80 Ohio St., 746, unreported, it did not appear that the land was unenclosed. In McDorman v. Ballard et al., Trustees, 94 Ohio St., 183, it did not appear that the land was unenclosed. In the former case the landowner, objecting to the improvement, won on the authority of the Gozad cáse. In the latter case, McDorman v. Ballard, such landowner lost on the same authority. The facts are identical in each case.
The last word on the subject, so far as we know, will be found in Zarbaugh, Treas., v. Ellinger, 99 Ohio St., 133, 137, where the history of Section 5908, and the decisions thereon, are reviewed, as follows:
“From the fact that for so long a time the statutes required an owner to contribute to the cost only where the ‘fence answered the purpose of enclosing his land,’ it would seem to be apparent that at that time the general assembly felt that the only benefit conferred on a farmer’s land by a fence was by its making a complete enclosure. The amendment to the statute in 1904, now Section 5908 et seq., General Code, evidences a different view by the legislature and a determination to impose a larger duty, namely, the view that there are conditions and circumstances in which a partition fence is of advantage and value to a landowner, even when it does not make a complete enclosure. When such a situation is presented the enforcement of the requirements of the statute is not a violation of rights guaranteed by the constitution.”
So we take it that the question in this case is not whether the partition fence when constructed will inclose the lands of the plaintiff, but whether his premises will be benefited by such fence — whether *398 such fence will be of advantage and value to the farm. For, if so, then Section 5908 et seq. must govern, like any other statute that is not contraiy to the state or federal constitutions.
The agreed statement of facts reads as follows:
“It is admitted that there are 53% acres of land in the tract set out in his petition and that the lands • of Rebecca Williams joins said land on the north and that the said Rebecca Williams has constructed half of the line fence between her land and the said 53% acres of land belonging to the plaintiff * * *.
“It is admitted that there are 30 acres of land in cultivation of the 53% acres; that seven acres of the same are in com and six acres are in oats and fifteen acres are in' meadow; that neither the said oats, com or meadow are enclosed; that the said corn and oats land lies adjacent to the land of the said Baird and adjacent to the fence already constructed by the said Baird. It is admitted that the said Baird is using bis land adjacent to the said 53% acres of land on the south for pasturing purposes and that if the land of the said Baird be pastured that there are no fences to prevent the stock of the said Baird from destroying the said crops of the said Jennings. It is also admitted that the said Jennings, plaintiff herein, intends to cultivate his land in the future, to-wit: the said 53% acres of land, to the same extent that he is now cultivating the same * * *. ’ ’
That the building of the partition fence will benefit the land of the plaintiff we entertain no doubt. If land is cultivated, or to be cultivated, no one can deny that a fence is beneficial to it. A fence which partially encloses cultivated land is beneficial to some extent. If it encloses the field adjoining, it will *399 prevent injury from stock in that field. Even if it does not enclose such field it will prevent in some degree encroachment by stock kept on the other side of the fence. Besides, when a farm is fenced on one side it requires just that much less exercise of muscle and outlay of money to complete an entire enclosure, which is generally necessary to the proper- cultivation of the tract. Every rod of partition fence added to a tract of land which is under cultivation and is intended for cultivation adds that much to the value-of the farm. It is no argument for the landowner to say that because he does not want a fence, and will take all chances from straying livestock, the fence will be of no benefit or value to his land. Except in cases where the partition, fence will be of no benefit, as when the land is wild and uncultivated and is to remain so, the owner must build his fences whether he regards them as of any benefit or not.
We adopt the suggestion of Judge Johnson in the case last referred to, Zarbaugh v. Ellinger, because that comports with our view of the statute-under consideration. The statute makes no mention of enclosures, and is intended to operate in all cases-, and must do so, except in case of land which will not be benefited by a partition fence — an exception written into the statute by the supreme court.
The decree will be in favor of the defendants, and the petition of plaintiff will be dismissed:
Middleton and Matice, JJ., concur.