KLOEPPEL, APPELLANT, *v.* PUTNAM, TREAS., APPELLEE.

(No. 167—Decided March 5, 1945.)

*Mr. F. E. Warren,* for appellant.
*Mr. Kerns Wright,* for appellee.

GUERNSEY, J.  This is an appeal upon questions of law, from a judgment of the Court of Common Pleas of Van Wert county, Ohio, in an action wherein Hazel Kloeppel, the appellant herein, was plaintiff, and Walter E. Putnam, treasurer of Van Wert county, Ohio, the appellee herein, was defendant.

The plaintiff filed her petition in the Common Pleas Court of Van Wert county, Ohio, praying for an order permanently enjoining the defendant, the treasurer of Van Wert county, Ohio, from collecting as taxes the expense of constructing a certain partition fence along her land.  To the petition the defendant filed a general demurrer.  The Common Pleas Court sustained the demurrer and, the plaintiff not desiring to plead further, dismissed plaintiff's petition at her costs.  This is the judgment from which the plaintiff has appealed.

In her petition the plaintiff alleges that she is the owner of a certain 40-acre farm in Van Wert county, Ohio; that she resides in an adjoining county; that the farm is and has been rented throughout the ten years

the plaintiff has owned it, under a grain rent farm lease; and that there are no buildings, wells, streams, woods or permanent pasture on the farm.

Plaintiff further alleges that part of the farm had been fenced by the prior owner, who had other land with buildings adjoining this parcel, and no new fence had been constructed by plaintiff or any field used for livestock during the entire time plaintiff owned such farm.

Plaintiff further alleges that she has always farmed the premises as a strictly grain farm which is the method of farming employed by most of the neighborhood in which this farm is located; and that she never intends to stock or pasture the farm because of the small acreage, lack of facilities, buildings, waters, fences and improvements, and for the further reason that the cost of converting such a small parcel of land into a stock farm would be prohibitive, the acreage being too small to justify the expense of such improvement.

Plaintiff further alleges that on September 8, 1943, one Clarence Mox, on behalf of the Mox estate, made an application in writing to the township trustees of Washington township in the county in which such premises are situated, to view the premises where he had requested a partition fence to be erected on the line between the premises owned by the estate and the premises owned by plaintiff, and to assign to each party his equal share of such fence; and that the trustees, over the objection of plaintiff, complied with such request, and after due notice to plaintiff did order plaintiff to build within a certain time a specified one-half of such fence and "Mox estate" to build the other half.

Plaintiff further alleges that she refused to comply with the order; that upon application of the estate the township trustees, on the 8th day of November 1943, contracted to have the fence constructed with one Ed-

ward Horstman, lowest responsible bidder; and that the fence was built.

Plaintiff further alleges that on or about February 15, 1944, the township trustees caused the expense and costs of the fence to be certified to the county auditor of Van Wert county, Ohio, to be charged upon the tax duplicate against the lands of plaintiff, the certificate for the fence construction and cost being in the sum of $124.90, that such charge having been made, the defendant as such county treasurer now threatens to collect the same as a lien upon the lands of plaintiff, and that plaintiff is without an adequate remedy at law.

Plaintiff further alleges that the fence, for the reasons above set forth, is of no value or benefit whatsoever to plaintiff.

The prayer of the petition is that the defendant, as treasurer, be perpetually enjoined from collecting the expense of constructing the partition fence from plaintiff, and for further relief.

The plaintiff assigns error in that the judgment of the Common Pleas Court sustaining the demurrer and dismissing plaintiff's petition is contrary to law.

It will be noted that the plaintiff does not question the regularity of the proceedings under which the assessment sought to be enjoined was made, her only contention being that, by reason of the nature of her premises and the purpose for which she is using and contemplates using the premises, she derives no benefit from the construction of the fence; and that as she receives no benefit from the construction of the fence, the assessment comes within the constitutional inhibition forbidding the taking of private property for public use without compensation.

In support of her contention she relies on the decision of the Supreme Court in the case of *Alma Coal Co.* v. *Cozad, Treas.,* 79 Ohio St., 348, 87 N. E., 172, the syllabus of which reads as follows:

"1. The provisions of the Constitution forbid not only the taking of the private property of one, but as well the laying of an imposition upon it, for the sole benefit of another.

"2. The act of April 18, 1904 (97 Ohio Laws, 138), may not be so construed and administered as to charge an owner of lands which are, and are to remain, unenclosed, with any part of the expense of constructing and maintaining a line fence for the sole benefit of the adjoining proprietor."

The decision above mentioned was considered, discussed and explained in the case of *Zarbaugh, Treas.,* v. *Ellinger,* 99 Ohio St., 133, 124 N. E., 68, 6 A. L. R., 208. Attention is called to the fact that in the decision in that case the court did not hold the statutes, relating to the construction of partition fences, which are similar to the statutes now in effect relating to the same subject matter, were unconstitutional but simply denied the right to invoke their application to a situation such as was found in that case. The situation found in that case was that the lands of the coal company, which were assessed for the construction of a partition fence, were wild, uncultivated and unfenced, that the company had no intention to improve, fence or cultivate any portion of them, and that the fence could be of no value to it whatsoever and inured to the sole benefit of the adjoining proprietor.

The court, in its opinion, stated further that in that case there could be no compulsion, under the police power, to build the fence or contribute to the cost of it because there was no such use of the coal company's property as to indicate probable injury to its neighbors or the community in the absence of a fence.

The court in the *Zarbaugh case, supra,* commenting upon the nature of a fence assessment, makes the following statement:

"The assessment differs from a special assessment

to pay for a public improvement made by a governmental body. In the latter case the special assessment is made and sustained because the public improvement confers a special benefit on the property assessed, different from the general benefit conferred on the public; and the special assessment must be limited to the extent of the special benefit. But, in the case of the fence, there is no assessment in the sense just described. The owner is required by the statute to himself build his part of the fence. That is a duty that is imposed upon him, because of the situation and the use made of his property; and because of its relation to the property of his neighbors. If he does not perform it, the designated authorities proceed to build the fence and collect the cost thereof from him in the manner laid down in the statute.

"The state is invested with the power in the presence of the necessities of economic conditions to prescribe such regulations with reference to persons and property as are reasonable and have a real relation to the subject."

The court quotes with approval from the opinion in the case of *Noble State Bank* v. *Haskell*, 219 U. S., 104, 55 L. Ed., 112, 31 S. Ct., 186, involving the constitutionality of a law passed in the exercise of police power, the pertinent part being as follows:

"An ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use."

The factual situation in the instant case differs from the factual situation in the case of *Alma Coal Co.* v. *Cozad, Treas., supra,* in that in the instant case the lands assessed are under cultivation while in that case the lands assessed were wild and uncultivated.

In the case of *Jennings* v. *Nelson,* 15 Ohio App., 395, the statutes relating to the subject of partition fences,

then in effect, which statutes are in all respects similar to the statutes relating to the same subject matter now in effect, and the decisions under such statutes, including the decisions in the case of *Alma Coal Co.* v. *Cozad, Treas., supra,* and *Zarbaugh, Treas.,* v. *Ellinger, supra,* at page 137, are considered and discussed, and the following conclusion reached: "If land is cultivated, or to be cultivated, no one can deny that a fence is beneficial to it. A fence which partially encloses cultivated land is beneficial to some extent. If it encloses the field adjoining, it will prevent injury from stock in that field. Even if it does not enclose such field it will prevent in some degree encroachment by stock kept on the other side of the fence. Besides, when a farm is fenced on one side it requires just that much less exercise of muscle and outlay of money to complete an entire enclosure, which is generally necessary to the proper cultivation of the tract. Every rod of partition fence added to a tract of land which is under cultivation and is intended for cultivation adds that much to the value of the farm. It is no argument for the landowner to say that because he does not want a fence, and will take all chances from straying livestock, the fence will be of no benefit or value to his land. Except in cases where the partition fence will be of. no benefit, as when the land is wild and uncultivated and is to remain so, the owner must build his fences whether he regards them as of any benefit or not."

As these statutes with reference to the subject of partition fences constitute regulations within the police power, as held by the Supreme Court in the *Zarbaugh case, supra,* we approve the conclusion above quoted.

Applying this conclusion to the facts in the instant case it is clear that the plaintiff derives sufficient ben-

efit from the construction of the partition fence to sustain the validity of the assessment.

For the reasons mentioned, the judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and JACKSON, J., concur.