Leonard MILES, et al., Respondents,

v.

Peter J. ALTHOFF, Appellant.

No. C6-85-300.

Court of Appeals of Minnesota.

Sept. 3, 1985.

Review Denied Nov. 1, 1985.

Richard H. Breen, Brainerd, for respondents.

Paul Wendlandt, Jr., Crosby, for appellant.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Respondents brought this action to obtain compensation for erection of a partition fence. Fence viewers had ordered appellant to erect the fence, and he failed to do so. Appellant claimed that he had not received notice of a fence examination by town viewers. The trial court held that there was substantial compliance with the notice requirement, and ordered judgment for respondents. We reverse.

## FACTS

Appellant and respondents own property in Crow Wing County, with a common boundary line. Respondent Miles was dissatisfied with the upkeep of that portion of the boundary line fence that appellant Althoff was to maintain. He expressed his complaints to the township board. The board authorized one of its members, Bill Tautges, to notify appellant that it was going to view the fence. Tautges did not testify at the trial, and appellant testified that the verbal notice that he received consisted of a comment by Tautges in a bar or a store to the effect that appellant had a fence problem coming up, with some reference to a lawsuit. He denied being told that the board would view the fence, or that Tautges requested that appellant attend a board meeting to discuss the matter.

At some time prior to October 4, 1982, the three members of the board, acting as fence viewers, walked the fence line and examined the fence. They decided that the fence was not sufficient to hold cattle and had to be replaced. On October 4, 1982, the board sent Althoff a letter notifying him of his partition fence duties under Minn.Stat. § 344.03 (1982) and requesting that he put a line fence on his share by November 3, 1982.

Appellant testified that he did not contact the town board to object, although he did advise the clerk of his feelings on the matter. He did not respond because he thought the board did not complete a fence viewing and because he thought a conciliation court dispute between the landowners had disposed of the matter. He further stated that he maintained the fence properly.

Respondent Miles determined from his own inspection of the property that appellant had not built the proposed fence. He informally notified the board by informing his brother-in-law, who was on the board, and another board member, that he was going to repair the fence. The board did not object.

Respondent began building appellant's portion of the fence in June 1983. He did not contact appellant to inform him that he was doing so. The fence was completed shortly thereafter; Althoff testified that he discovered the new fence on about July 1.

After they were notified the fence work was done, members of the board viewed the completed fence. To respondent's knowledge, the board did not give appellant any notice that they were viewing the fence after its completion.

Respondent Miles attended a meeting with the board to discuss his bill, but he cannot remember the exact date of the meeting. On August 1, 1983, the board sent Althoff a bill of $2,068.48 for the

expense of erecting the fence. The accompanying letter notified appellant that the bill was presented to him under Minn.Stat. § 344.05 (1982). It advised him that if he had any questions, he should appear before the board at the next town meeting on September 6. Finally, it advised him that he had 60 days to pay the bill without any consequences. Appellant attended the meeting and objected.

Appellant never paid the bill, and respondent brought this action to obtain payment. In the suit, respondent asked for appellant's share of fence repairs, the penalty under Minn.Stat. § 344.05, which entitled respondent to double the amount expended, and the $45 fence examining fee, for a total of $4,181.96. The appellant defended by stating the repairs were not made pursuant to Minn.Stat. ch. 344 and that proper notice was not given to him; he counterclaimed for damages for trespass.

After a bench trial, the court found that there was "substantial compliance in the notification" of appellant of the viewing. The court found that appellant was properly notified of a direction to construct a fence and of the cost of the completed fence, and respondent was awarded his judgment. This appeal followed.

## ISSUES

1. Was there sufficient compliance with the notice requirement of Minn.Stat. § 344.04 prior to the fence examination?

2. Did the fence viewers have jurisdiction over the proceedings in the absence of proper notice to appellant?

## ANALYSIS

■ 1. Minn.Stat. § 344.04 (1982) provides that after an aggrieved party complains to the fence viewers that a partition fence is in need of repair, the fence viewers shall examine such fence "after notice to the parties." *Id.* Appellant contends he did not receive this notice. The trial court found "substantial compliance" in the notification of appellant of the viewing. Findings of the trial court must be affirmed unless clearly erroneous. Minn.R.Civ.P. 52.01.

Bill Tautges, the member of the town board who was authorized to give notice to appellant, did not testify at the trial. Daniel Neeser, the board member who did testify, was not sure whether, at the time Tautges was to give appellant notice, a specific time and date had been set to view the fence. Finally, appellant testified that he did remember talking to Tautges in a bar or store, but that the most he remembered of the "notice" was a reference by Tautges to a "fence problem" and a lawsuit. There was no evidence presented to the court that would allow it to conclude that appellant had been notified of the viewing or of the time or place of the viewing.

A notice must be sufficiently complete to furnish important information.

> [W]here a statute requiring notice does not set further guidelines for the form that notice must take, the statute has been satisfied where the notice is "sufficient to apprise one of ordinary intelligence" of the nature and subject of the hearing.

*City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 392 (Minn.1980) (citing 13 E. McQuillan, *Municipal Corporations* § 37.-42 (3d ed. 1971)). There is no evidence here that the appellant was given any notice as to either the nature or the subject of the viewing.

We do not hold here that written notice is required, although it would be advisable. *See* Booth's Town and City Manual 617 (1980) (sample of an appropriate form). We note that in Minn.Stat. § 344.04, the statute specifically provides that notice to the owner directing him to repair or replace the fence must be in writing, but that there is no such requirement for written notice of the viewing.

Respondents failed to meet their burden to prove that notice was given as required by statute. There is no evidence to sustain a finding of substantial compliance with the statutory notice requirement.

2. What is the effect of the lack of notice? In *McClay v. Clark*, 42 Minn. 363, 44 N.W. 255 (1890), where no notice of a final appraisement was given, the supreme court held:

> The duties of the supervisors, when acting as fence-viewers, are judicial in their nature, and notice is necessary to give them jurisdiction to make an apportionment of a partition fence, and also to make an appraisal of the value of the same, or the repairs thereof, and without such notice the proceedings are void, unless the parties voluntarily appear.

*Id.* at 365, 44 N.W. at 255–56. In *Davis v. Board of County Commissioners of St. Louis County*, 65 Minn. 310, 67 N.W. 997 (1896), the court, in dicta, referred to the fence partition laws, noting that "[s]uch notice is essential to the validity of the proceedings." *Id.* at 313, 67 N.W. at 998.

In *Pickerell v. Davis*, 164 Iowa 576, 146 N.W. 34 (1914), the Iowa Supreme Court considered whether the trustees in a fence viewing case had jurisdiction to make a finding or order, binding upon the defendant, without notice to him of the time or place of the viewing. The court concluded, relying in part on *McClay*:

> The fence viewers act judicially, in respect to their duties and when acting within their jurisdiction, their finding is final and conclusive upon the parties, unless appealed from. Notice to the adverse party is essential to give them jurisdiction, to make an apportionment of a partition fence, or to appraise the value of such fence, or the cost of construction; and, without such notice, whether the statute prescribes notice or not, their proceedings are void for want of jurisdiction.

*Id.* at 580–81, 146 N.W. at 36. The court also discussed why this is so:

> The jurisdiction of the fence viewers is the most limited kind, and its mode of procedure is defined by the statute. All the requirements of the statute are essential to jurisdiction, and so it follows that want of notice of the intended action, as in almost every judicial proceeding, is in this limited tribunal a fatal want of jurisdiction. The party is only bound, by the action of a court of this kind, in respect to *matters of which he had notice*.

*Id.* at 584–585, 146 N.W. at 37 (emphasis in original).

In *Pickerell*, as here, the defendant was given notice that the fence viewers had assessed the cost of constructing the fence. The court found that this notice did not relate back to give the fence viewers jurisdiction to make the order and fix the amount for which the suit was brought. *Id.* at 587, 146 N.W. at 38.

Consequently, the fence viewers in this case had no jurisdiction to find an amount owing and order appellant to make payment to respondents. The proceedings are void.

### DECISION

There was no evidence to sustain the trial court's finding that appellant received notice of the viewing. Without such notice, the fence viewers did not have jurisdiction to make their findings and assess an amount that appellant was compelled to pay; those findings and assessment are void.

Reversed.

NIERENGARTEN, J., concurs specially.

NIERENGARTEN, Judge, concurring specially.

I concur with the majority opinion, but not on the insufficiency of the notice to appellant that the fence viewers were going to examine the fence pursuant to provisions of 344.04. I don't think that the informality of that notice (orally in a tavern) caused any harm to appellant. That notice serves only the purpose of giving appellant a chance to view the fence with the fence viewers and the opportunity to persuade them that the fence is not in need of repair. The more important notice is the second notice required under 344.04 requiring the viewers to notify a delinquent owner in writing that a fence is insufficient and

directing him to build or repair the fence within a reasonable time. An examination of the record indicates that that notice, in the form of a letter dated October 4, 1982, from the township supervisors, merely requested that Althoff "put in a line fence * * * "maintain your portion of the fence line * * * which fence must be in and work completed in thirty days or by November 3." This notice does not substantially meet the requirements of 344.04 which requires the fence viewers to notify the owner, at least in substance, that (1) the existing fence is insufficient or that a new fence is necessary; (2) direct him to build, repair or rebuild the fence; and (3) if he fails to comply with such directions, the person who complains about the fence may build, repair or rebuild such fence at his own expense subject to reimbursement. The majority decision, of course, results in Althoff receiving a new fence at no cost and his neighbor complainant having to absorb that cost because of the failure of the township board to substantially comply with statutory requirements.