COMMONWEALTH CAPITAL CORPORATION, Respondent,

v.

FEDERAL DEPOSIT INSURANCE COR- PORATION as Receiver for the State Bank of Barnum, Appellant,

Minnesota Commissioner of Commerce, Respondent.

No. C7–86–1501.

Court of Appeals of Minnesota.

Feb. 17, 1987.

James H. Levy, John L. Sullivan, Michael C. Connelly, Oppenheimer, Wolff, Foster Shepard & Donnelly, St. Paul, for Commonwealth Capital Corp.

John N. Nys, Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for Federal Deposit Insurance Corporation as Receiver for the State Bank of Barnum.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Com'r of Commerce.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

Commonwealth Capital Corporation sued the Federal Deposit Insurance Corporation, as receiver for the State Bank of Barnum, to recover commissions owing from an agreement with the bank. The trial court granted summary judgment in favor of Commonwealth, and FDIC appeals. We affirm in part and vacate in part.

## FACTS

In 1981 the State Bank of Barnum entered into an agreement with Commonwealth Capital Corporation, a Virginia corporation doing business in Minnesota, authorizing Commonwealth to negotiate for the bank in obtaining certificates of deposit. The bank agreed to pay Commonwealth a commission due upon receipt of the brokered deposits.

On August 17, 1982, Commonwealth arranged for a four-year, $4 million certificate of deposit to be placed with the bank. Commonwealth agreed to accept payment of the $160,000 commission in four equal annual installments of $40,555.56. The bank paid the first installment on January 17, 1982.

The bank began experiencing financial difficulties, and on February 8, 1983, the Commissioner of Banks (now Commissioner of Commerce) took possession for purposes of liquidation. The Commissioner appointed the Federal Deposit Insurance Corporation (FDIC) as receiver for the bank.

On August 9, 1983, Commonwealth filed a claim with FDIC for the remaining installment payments. By a letter also dated August 9, 1983, FDIC informed Commonwealth that no further commission payments would be made because the certificate of deposit had been paid back to the depositor. FDIC also indicated its intent to reject any claim submitted by Commonwealth.[1]

Commonwealth sent another letter to FDIC on October 27, 1983, arguing it had fully earned its commission when the funds were deposited and requesting FDIC to reconsider its position. FDIC replied on December 14, 1983, explaining that just as the owners of the certificate received no interest on their deposit after the bank failed, Commonwealth should not receive its commission for arranging the certificate's deposit after the bank closed. FDIC specifically referred Commonwealth to Minn.Stat. § 49.24, subd. 5, told them they had 60 days to sue following rejection of a claim, and informed Commonwealth of the proper venue for the lawsuit.

About the first of February 1984, FDIC filed affidavits with the district court and the Commissioner of Commerce stating it

---

**1.** The letters apparently crossed in the mail and FDIC had not yet received Commonwealth's claim when it sent the August letter.

had rejected Commonwealth's claim and had served them with notice of rejection by letter of December 14, 1983.

On March 12, 1985, Commonwealth sued FDIC and the Commissioner of Commerce for the unpaid commission. FDIC answered, affirmatively raising a statute of limitations defense and alleging the underlying deposit was illegal because it violated a statute regulating the bank's ratio of liabilities to capital. FDIC counterclaimed that Commonwealth was not entitled to the full first year's commission because the deposit had been with the bank for only 176 days.

At trial, on cross-motions for summary judgment and based on stipulated facts, the court granted Commonwealth and the Commissioner of Commerce summary judgment and denied FDIC's motion for summary judgment. FDIC now appeals.

## ISSUES

1. Is Commonwealth's claim barred by the statute of limitations contained in Minn. Stat. § 49.24, subd. 5?

2. Is FDIC entitled to partial repayment of the first installment of Commonwealth's commission?

## ANALYSIS

### I

The facts underlying this appeal are not in dispute, and the only question we consider is whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Upon a determination that a financial institution is violating state banking laws or is conducting its business in an unsafe manner, the Commissioner of Commerce may take possession of the property and begin liquidation. Minn.Stat. § 49.04, subd. 1 (1984). The Commissioner is authorized to appoint the FDIC as receiver for a bank. Minn.Stat. § 48.57 (1984).[2] The pro-

cedure for liquidation is set out in Minn. Stat. § 49.24 (1984).

The receiver must publish notice to all persons who have claims against the institution. It must then evaluate the validity of those claims. If the receiver doubts the validity of a claim, the following statute applies:

**Subd. 5. Rejection of claims; actions; limitations.** If the commissioner doubts the justice or validity of any claim, [the commissioner] may reject the same in whole or in part and serve notice of such rejection upon the claimant, either by mail or personally. An affidavit of the service of such notice made according to law shall be filed with the commissioner. An action upon a claim so rejected must be brought within 60 days after such service and the filing of proof thereof. The venue of such action shall be in the county in which such financial institution had its principal place of business prior to liquidation, and such action shall be brought jointly against the financial institution and the commissioner as statutory liquidator thereof.

Minn.Stat. § 49.24, subd. 5 (1984).

At trial Commonwealth argued that FDIC did not serve notice of rejection and its claim should be allowed. The trial court held that "formal" notice of rejection is required, that FDIC did not provide formal notice and inform Commonwealth how to proceed, and granted summary judgment to Commonwealth.

In rejecting claims in a bank liquidation, Minn.Stat. § 49.24, subd. 5, requires the Commissioner to serve notice of the rejection either by mail or personally. The statute does not specify the form notice should take. Where a statute requiring notice does not set further guidelines for the form, the statute is satisfied if the notice is sufficient to apprise one of ordinary intelligence of the procedures to follow. *City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 392 (Minn.1980); *see also Miles v. Althoff,*

**2.** This statute was repealed by 1985 Minn. Laws, 1st Spec. Sess., Ch. 13 § 376, and subsequently reenacted as Minn.Stat. § 49.05, subd. 5 (1986), in substantially the same form.

373 N.W.2d 655, 657 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Nov. 1, 1985).

FDIC notified Commonwealth that its claim had been rejected. On August 9, 1983, FDIC responded to Commonwealth's inquiry about filing a claim and clearly stated its position that since the funds were no longer on deposit but had been returned to the original depositor, it would not pay any further commissions. Commonwealth obviously construed the letter as a rejection and, in another letter, asked FDIC to reconsider.

■ In the context of letters sent between the parties, FDIC's reply letter of December 14 contained sufficient information to enable Commonwealth to comply with the statute and constituted adequate notice. *See Peterson v. Marston,* 362 N.W.2d 309 (Minn.1985). The December letter clearly explained FDIC's position that the claim would not be paid and specifically referred Commonwealth to the statute and the 60–day limitations period in which to file suit. In accordance with the statute, FDIC filed affidavits with the Commissioner and the trial court stating that notice of rejection of Commonwealth's claim had been served upon them on December 14.

FDIC also argues Commonwealth's claim is illegal because the underlying deposit caused the bank to violate state banking law by accepting deposits in a sum exceeding 30 times the amount of its capital stock and its actual surplus. Minn.Stat. § 48.27 (1984).

■ Although this is an alternative argument which is partially obviated by our application of the statute of limitations, we address it because it affects the initial installment payment. The statute regulates only banks and trust companies. It does not proscribe actions of Commonwealth. Further, the evidence is not clear the deposit was illegal, since the bank has 90 days after notice of an imbalance in which to cure it by either reducing its liabilities or increasing its capital. Minn.Stat. § 48.28 (1984). Commonwealth's commission is not affected by this statute, and the trial court properly dismissed FDIC's claim on this issue.

## II

FDIC claims Commonwealth is not entitled to retain the $40,555.56 it received as the first installment. FDIC reasons that the commission payment was to be prorated over the four-year term of the deposit. Commonwealth was paid $40,555.56, but the bank retained the deposit for only 176 days; thus, FDIC claims Commonwealth received an overpayment of $20,728.39.

We are not persuaded by the argument. In the April 7, 1981, letter, the bank agreed to pay Commonwealth when the funds were deposited. Commonwealth delivered the certificate of deposit on August 17, 1982, earning the right to receive the payment. The fact the parties agreed payment would extend over the term of the deposit does not affect Commonwealth's right to receive payment of the first installment.

■ The trial court properly denied summary judgment on FDIC's counterclaim. Minnesota courts recognize that a broker is entitled to commission upon completion of performance. *See Olson v. Penkert,* 252 Minn. 334, 342, 90 N.W.2d 193, 200 (1958); *Schramsky v. Hollmichel,* 233 Minn. 481, 484, 47 N.W.2d 177, 179 (1951).

## DECISION

We affirm the trial court's holding that the claim is not barred because of illegality and that FDIC is not entitled to refund. However, we vacate the judgment in favor of Commonwealth because the trial court had no jurisdiction to hear a claim brought after the applicable limitations period had run.

Affirmed in part and vacated in part.