**In re the June 9, 2000 Fence Viewing PETITION OF Gary BAILEY.**

No. C9–00–1703.

Court of Appeals of Minnesota.

May 15, 2001.

Robert A. Woodke, Brouse, Woodke & Meyer, Bemidji, MN, (for relators Barbara and Gerald Feldman).

Alan B. Fish, Alan B. Fish, P.A., Roseau, MN, (for respondent Gary Bailey).

Philip K. Miller, Lake of the Woods County Attorney, Baudette, MN; and Jay T. Squires, Minneapolis, MN, (for respondent Lake of the Woods County as fence viewers).

Considered and decided by RANDALL, Presiding Judge, FOLEY, Judge, and HUSPENI,* Judge.

## OPINION

DANIEL F. FOLEY, Acting Judge.

On appeal from a decision of the Lake of the Woods County Commission requiring contribution for installation of a statutory fence in a farmed cervidae operation,[1] rela-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The term "cervidae" refers to a family of mammals. "The cervids include deer and their allies, including familiar moose, elk, and caribou." UNIVERSITY OF MICHIGAN MUSEUM OF ZOOLOGY, ANIMAL DIVER-

SITY WEB, *available to* http://animaldiversity.ummz. umic.edu/chordata/mammalia/artiodactyla/cervidae.html. Minn.Stat. § 17.451, subd. 2 (2000) defines "farmed cervidae" as "members of the cervidae family that are * * * raised for the purpose of producing fiber, meat, or animal by-products, as pets, or as breeding stock[.]"

tors allege that (1) the application of Minnesota Statutes chapter 344, the Minnesota fence viewer statute, violated the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13, of the Minnesota Constitution by depriving them of due process of law and just compensation for taken property; (2) the contribution decision exceeded the statutory powers of the fence viewers under Minn.Stat. § 344.02 (2000); and (3) the fence viewers abused their discretion in approving a specific type of fence. We affirm.

## FACTS

Respondent Gary Bailey owns approximately 500 acres of land for a farmed cervidae operation. On May 12, 2000, respondent petitioned the Lake of the Woods County Commission for a fence viewing. In this petition, respondent requested cost sharing for a fence surrounding the property he owns. Relator Barbara Feldman owns the property abutting respondent's parcel. Respondent stated that although he planned to construct a 96 inch woven wire fence, he sought contribution only for the cost of a five-strand barbed wire fence.

The fence viewing was held in June 2000. Because Lake of the Woods County has no organized townships, the county board appointed Robert Sutherland and Vern James as fence viewers, pursuant to Minn.Stat. § 344.19 (2000).

Respondent Bailey submitted to the viewers that material and labor costs for installation of a five-strand barbed wire fence are $1.50 per linear foot. Relator Gerald Feldman informed the county board that he had installed this type of fence in the past, he estimated the cost of materials for the fence at about $.24 per linear foot, and he stated that he would be willing to install his portion of the fence, thus saving labor costs.

Respondent attempted to amend his petition to include three quarters of a mile of a boundary shared with the Feldmans. The viewers denied this amendment because insufficient notice was given.

Due to heavy rainfall, the parties and the viewers agreed to waive an actual viewing of the property. The parties stipulated that relators' property was either under water or heavily brushed, making it difficult to view. There is no trail system on this portion of relator's property. Respondent has an extensive trail system on his parcel.

In an August 4, 2000 order, the viewers found that the five-strand barbed wire fence Gerald Feldman offered to construct would not be legally sufficient to confine a cervidae herd, and therefore denied his offer. The viewers granted respondent's request for contribution toward the cost of a five-strand barbed wire fence, and ordered relators to pay $2,970 for their share. The viewers ordered that payment need not occur until respondent completed construction of the planned 96 inch woven wire fence.

On June 12, 2000, while the first petition was still pending, respondent submitted another petition for a fence viewing. The petition stated the property to be viewed was located in an adjacent section of Potamo Township. A viewing date was set for August 4, 2000.

At the August 4 viewing, respondent requested contribution toward the cost of a 96 inch woven wire fence pursuant to Minn.Stat. § 17.452, subd. 10(a)(3) (2000), and submitted an estimate of material and labor costs at $4.50 per linear foot. Respondent requested that he first install the fence, and upon completion, submit a bill to relators for one-half the total cost. Relators objected to construction of this fence along their property line, stating

that they preferred to install their portion of the fence, as opposed to reimbursing respondent after completion. The parties stipulated that there was no property line dispute involved in this viewing. On September 6, 2000, the viewers ordered relators to install their portion of a 96 inch woven wire fence that comports with Minn.Stat. § 17.452, subd. 10(a)(3).

Relators now challenge both the August 4 and September 6, 2000 orders.

## ISSUES

1. Is the application of Minnesota Statutes chapter 344, the Minnesota Partition Fence Statute, to relators' land unconstitutional in violation of the Fifth and Fourteenth Amendments of the United States Constitution, or Article I, Section 13, of the Minnesota Constitution?

2. Did the fence viewers abuse their discretion in ordering relators, adjoining landowners, to contribute financially to a fence in a farmed cervidae operation, rather than allowing them to construct their portion of the fence?

3. Did the fence viewers abuse their discretion in requiring construction of a 96 inch woven wire fence?

## ANALYSIS

■■ This matter is before the court on a writ of certiorari for review of the Lake of the Woods County fence viewers' decisions to require contribution and partial construction of two partition fences.

On certiorari review of a board decision, the court's inquiry is limited to questioning whether the board had jurisdiction, whether the proceedings were fair and regular, and whether the board's decision was unreasonable, oppressive, arbitrary, fraudulent, without evidentiary support, or based on an incorrect theory of law.

*Radke v. St. Louis County Bd.*, 558 N.W.2d 282, 284 (Minn.App.1997) (citation omitted).

## I.

■■ Relators argue that the Minnesota partition fence statute is unconstitutional as applied to them. Evaluating a statute's constitutionality is a question of law. *In re Blilie*, 494 N.W.2d 877, 881 (Minn. 1993). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citation omitted).

"[P]rivate property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause has been applied to the states through the Fourteenth Amendment. *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 236, 17 S.Ct. 581, 584, 41 L.Ed. 979 (1897). Similarly, Minn. Const. art. I, § 13, provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation."

■■ In determining whether a statute results in an unconstitutional taking when applied to a specific piece of property, the controlling test requires the landowner to "demonstrate that he had been deprived, through governmental action or inaction, of all the reasonable uses of his land." *County of Pine v. State, Dep't of Natural Resources*, 280 N.W.2d 625, 630 n. 4 (1979) (quoting *Czech v. City of Blaine*, 312 Minn. 535, 539, 253 N.W.2d 272, 274 (1977)). A showing that the property has merely diminished in market value is not sufficient. *Id.* The result would be similar under the federal constitution. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S.

104, 105, 98 S.Ct. 2646, 2650, 57 L.Ed.2d 631 (1978).

■ Relators argue that their use and enjoyment of the land will be diminished by construction of the partition fence. However, they have only speculated as to how this fence will affect their property. There are no facts in the record compelling the conclusion that relators will be deprived of all reasonable uses of their land. Relators failed to establish that this application results in an unconstitutional taking.

■ Relators also allege that the partition fence statute is not a valid exercise of the police power as applied to their land. The Minnesota Supreme Court has recognized that

> laws regulating the locating of the boundaries, and fixing permanent monuments to mark them, between landowners, and providing for some public officer or special tribunal to ascertain the cost of the work, and apportion the amount thereof to the respective owners benefited thereby, and for collecting the same, are in the nature of police regulations.

*Davis v. Board of Comm'rs,* 65 Minn. 310, 313, 67 N.W. 997, 998 (1896). The United States Supreme Court has set forth the test to determine whether a state has properly exercised its police powers.

> [T]he state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. To justify the state in thus interposing its authority in behalf of the public, it must appear first, that the interests of the public generally, as distinguished from those of a particular class, require

such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Lawton v. Steele,* 152 U.S. 133, 136–37, 14 S.Ct. 499, 501, 38 L.Ed. 385 (1894) (citations omitted).

■ We initially note that it is clear that Minnesota's partition fence law is constitutional on its face and passes the first prong of the *Lawton* test. *See Davis,* 65 Minn. at 313, 67 N.W. at 998. We believe it is clear that the partition fence law serves the broad purposes of mediating boundary, fence, and trespass disputes by requiring adjoining landowners to share the cost of a partition fence. "Courts have generally upheld fencing laws against various constitutional objections as a valid exercise of police power." *See Gravert v. Nebergall,* 539 N.W.2d 184, 187 (Iowa 1995); 35 Am. Jur.2d *Fences* § 10 (1967); 36A C.J.S. *Fences* § 8 (1961); Annotation, *Constitutionality of Fencing and Stock Laws,* 6 A.L.R. 212 (1920) (supplemental annotation at 18 A.L.R. 67 (1922)).

■ However, we cannot end our analysis here; we must also determine whether the statute is reasonably necessary to the accomplishment of that purpose and whether it is unduly oppressive to realtors. *See Lawton,* 152 U.S. at 137, 14 S.Ct. at 501. Relators argue that compliance with the fence viewers' order in this instance is not reasonably necessary for the accomplishment of a public purpose, and is unduly oppressive, because they must expend substantial sums of money to erect a fence from which they allegedly derive no benefit. Courts widely defer to legislative judgment; the government need not employ the least restrictive means when exercising its police powers, but rather "a means narrowly tailored to achieve the desired objective." *Board of Trustees v. Fox,* 492 U.S. 469, 480, 109

S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989). The single fact that a party must make substantial expenditures to comply with a regulatory statute does not render the statute unconstitutional. *Northwestern Laundry v. City of Des Moines,* 239 U.S. 486, 492, 36 S.Ct. 206, 208, 60 L.Ed. 396 (1916).

Relators rely on decisions from other state courts in support of their argument that Minnesota's partition fence law is not reasonably necessary to further a legitimate public purpose when applied to their land, and therefore is unduly oppressive. *See Choquette v. Perrault,* 153 Vt. 45, 569 A.2d 455, 460 (1989); *Sweeney v. Murphy,* 39 A.D.2d 306, 306, 334 N.Y.S.2d 239 (N.Y.App.Div.1972) (holding that requiring a landowner who does not own livestock to share the cost of a fence was not reasonably necessary to further any legitimate public purpose). Two Ohio courts reached a contrary conclusion, noting that a landowner without livestock derived benefit in the form of protection from encroaching livestock. *Glass v. Dryden,* 18 Ohio St.2d 149, 248 N.E.2d 54, 56–57 (1969); *Kloeppel v. Putnam,* 76 Ohio App. 130, 63 N.E.2d 237, 239 (1945); *see generally Gravert,* 539 N.W.2d at 188 (reaching same conclusion).

The *Glass* court noted that partition fence laws are similar to special assessments imposed by the government. *Glass,* 248 N.E.2d at 56. The court conceded that "a partition fence is not a public improvement in the sense that the public uses it directly," but the court reasoned that to the extent the statute prevents the "inevitable trespassing upon adjoining fields" that would result from the absence of a fence, the fence furthers "the ulterior public advantage." *Id.* (quotation omitted). The court presumed that private property immediately adjacent to the fence

is benefited unless evidence to the contrary is presented. *Id.*

We find the reasoning in *Glass* persuasive. Relators have asserted that the partition fence between their property and Bailey's property will not benefit their property. In fact, relators argue that their property will be adversely affected, because the fence will restrict wildlife movement in the area. Relators have not presented any evidence in support of these assertions. We find that relators will be benefited in several ways by the application of Minnesota's partition fence statute, including freedom from intrusion by neighboring livestock and increased privacy. Given these benefits, we find that Minnesota's partition fence law is not unduly oppressive and that it passes the second prong of the *Lawton* test.

## II.

Relators also argue that the fence viewers abused their discretion in requiring contribution for the partition fence, when they offered to construct their own portion of the fence. The September 6, 2000 order did direct relators to construct a 96 inch fence, rather than contributing to the cost of construction. Thus, this argument relates only to the August 4, 2000 order requiring relators to contribute to construction costs based on the estimated cost of a five-strand barbed wire fence.

An agency's decision is arbitrary and capricious when it is "based on whim or is devoid of articulated reasons." *In re Proposal by Lakedale Tele. Co.,* 561 N.W.2d 550, 553 (Minn.App.1997) (citation omitted). While a reviewing court will intervene if the absence in the record of findings or reasoning indicates the agency failed to address the salient problem, a

court will affirm if the record shows the agency engaged in reasoned decision-making. *See Cable Communications Bd. v. Nor–West Cable Communications P'ship,* 356 N.W.2d 658, 669 (Minn.1984).

The record reveals that relators offered to construct their portion of a five-strand barbed wire fence, but relators did not offer to construct a portion of the 96 inch woven wire fence, which is what respondent intended to erect, although he sought contribution only for the cost of a less expensive barbed wire fence. The fence viewers found that a five-wire barbed fence would not be sufficient to contain a cervidae herd and would not accomplish the intent of the petition. Because relators did not offer to build their portion of a fence that would actually contain the herd, the fence viewers reasonably required relators to contribute to construction costs. This was not an abuse of discretion.

## III.

Because a 96–inch woven wire fence is not included in the statutory list of "legal and sufficient fences," relators argue that the fence viewers exceeded their statutory authority in requiring them to construct such a fence. In interpreting and construing statutory language, our goal is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2000). If the words of the statute are "clear and free from all ambiguity," further construction is neither necessary nor permitted. *Id.* It is a fundamental rule of statutory construction that words and phrases are to be construed according to their plain meaning. Minn.Stat. § 645.08(1) (2000). A reviewing court may not read ambiguity into an otherwise clear statute under the guise of statutory interpretation. *Tuma v. Commissioner of*

*Econ. Sec.,* 386 N.W.2d 702, 706 (Minn. 1986).

Minn.Stat. § 344.02, subd. 1 (2000) lists several types of "legal and sufficient fences," but it does not include a 96 inch woven wire fence in the list. But determination of the type of fence to be constructed is left to the discretion of the fence viewers. *See* Minn.Stat. § 344.02, subd. 2 (2000) ("If adjoining land owners disagree as to the kind of fence to be built on any division line, the matter must be referred to the fence viewers, who shall determine what kind of fence should be built on the line and order it built."). Minn.Stat. § 17.452, subd. 10(a)(3) (2000) mandates that farmed cervidae must be confined by a fence of at least 96 inches. These statutory provisions, when read together, clearly give the fence viewers the authority to determine the type of fence to be built, including a 96–inch woven wire fence for the purpose of containing farmed cervidae.

## DECISION

Minnesota Statutes chapter 344 is constitutional as applied in this case. The fence viewers properly required contribution in respondent's first petition, and properly required construction of a 96 inch woven wire fence in respondent's second petition.

**Affirmed.**