Joseph GACKE, and Linda
Gacke, Appellees,

v.

PORK XTRA, L.L.C., Appellant.

No. 02–0417.

Supreme Court of Iowa.

June 16, 2004.

Rehearing Denied July 30, 2004.

Michael J. Jacobsma of Klay, Veldhuizen, Bindner, De Jong & Jacobsma, P.L.C., Orange City, Robert Malloy of Malloy Law Firm, Goldfield, and Eldon McAfee of Beving, Swanson & Forrest, Des Moines, for appellant.

Thomas W. Lipps of Peterson & Lipps, Algona, and Randall C. Wilson of the Iowa Civil Liberties Union Foundation, Des Moines, for appellees.

James A. Pugh of Morain, Burlingame & Pugh, West Des Moines, for amici curiae Iowa Farm Bureau Federation, Iowa Pork Producers Association, and Iowa Poultry Association, and Christina L. Gruenhagen, West Des Moines, for amicus curiae Iowa Farm Bureau Federation.

TERNUS, Justice.

The plaintiffs, Joseph Gacke and Linda Gacke, sued the defendant, Pork Xtra, L.L.C., claiming hog confinement facilities operated by Pork Xtra constituted a nuisance. At issue in this appeal is the constitutionality of Iowa Code section 657.11(2) (1999), which gives nuisance immunity to animal feeding operations. The district court ruled the statute effected an unconstitutional taking of private property without just compensation, relying on this court's decision in *Bormann v. Board of Supervisors*, 584 N.W.2d 309 (Iowa 1998). Denying the defendant the benefit of the statutory immunity, the trial court rendered judgment in favor of the plaintiffs

for the diminished value of their real property and for their intangible, personal damages caused by the defendant's hog confinement operation. The court denied punitive damages.

Both parties appeal. We hold that section 657.11(2) violates article I, section 18 of the Iowa Constitution to the extent it deprives property owners of a remedy for the taking of their property resulting from a nuisance created by an animal feeding operation. In addition, we conclude section 657.11(2), as applied under the circumstances of this case, constitutes an unreasonable exercise of the state's police power and therefore violates article I, section 1 of the Iowa Constitution. Although the district court correctly refused to apply the statutory immunity, we think the court erred in the admission of certain evidence. Therefore, we reverse the judgment entered in favor of the plaintiffs, and remand this case for retrial.

## I. *Background Facts and Proceedings.*

The Gackes live across the road from two hog confinement buildings owned and operated by Pork Xtra, L.L.C., a family farm corporation. The confinement facilities were built in 1996 and sit approximately 1300 feet north of the plaintiffs' farmstead, where the plaintiffs have resided since 1974.

On June 13, 2000, the Gackes filed this law action, alleging that Pork Xtra's operation was a nuisance. The plaintiffs claimed the defendant's facilities had caused personal injury to them, including emotional distress, and had resulted in a decrease in the value of their property. They asked for a permanent injunction restraining the defendant from operating a nuisance, compensatory and punitive damages, and other equitable relief.

The defendant pled the immunity of section 657.11(2) as an affirmative defense.

Judge John D. Ackerman granted the plaintiffs' motion to strike this defense, holding it resulted in a taking of the plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution and article I, section 18 of the Iowa Constitution. The case proceeded to trial before the court at which time Judge Dewie J. Gaul considered the plaintiffs' claim under the statutory and common law rules of nuisance.

In its ruling after trial, the district court found that the hog confinement facilities constituted a nuisance due to the frequent and significant noxious odors that emanated from the operation. The court determined that the value of the Gackes' property had been reduced by $50,000 because of this nuisance. It also concluded the plaintiffs should be awarded $46,500 to compensate them for their past inconvenience, emotional distress, and pain and suffering, but refused to award any future special damages. The trial court also believed the evidence was insufficient to support an award of punitive damages in view of the defendant's compliance with all statutory requirements for such a facility and Pork Xtra's valid economic reasons for locating the buildings on the site near the plaintiffs' home. In addition, the court denied injunctive relief, concluding the damage award fully compensated the plaintiffs. In a ruling on the plaintiffs' post-trial motion, the court ruled that should Pork Xtra not satisfy the money judgment, "the court's denial of injunctive relief shall be deemed to be without prejudice to a new action seeking such relief."

The defendant appealed and the Gackes filed a cross-appeal. Pork Xtra asks that we reverse the judgment rendered against it because there was insufficient evidence of a nuisance. Alternatively, it argues there was insufficient evidence to prove a loss of market value in the plaintiffs' prop-

erty and this portion of the damage award should be reversed. The defendant also seeks a new trial on two grounds: (1) the district court erred in holding section 657.11(2) unconstitutional; and (2) the court erroneously admitted prejudicial hearsay evidence. Based on these errors, the defendant asks this court to reverse the trial court's judgment and remand for retrial. Finally, Pork Xtra asserts the trial court should not have entered its supplementary order leaving open the possibility of equitable relief in the future.

The plaintiffs deny any error in the trial court's rulings and assert an alternative basis to uphold the district court's ruling that the statutory immunity was unavailable: section 657.11(2) is unconstitutional under the Inalienable Rights Clause found in article I, section 1 of the Iowa Constitution. The only issue raised on the Gackes' cross-appeal is their contention the trial court erred in failing to award future special damages.

II. *Section 657.11(2) Nuisance Immunity as an Unconstitutional Taking.*

■ The first matter we consider is the plaintiffs' successful challenge to the constitutionality of Iowa Code section 657.11(2), the statute giving nuisance immunity to the owners of animal feeding operations. This provision states in pertinent part:

> An animal feeding operation, as defined in section 455B.161, shall not be found to be a public or private nuisance under this chapter or under principles of common law, and the animal feeding operation shall not be found to interfere with another person's comfortable use and enjoyment of the person's life or property under any other cause of action.

Iowa Code § 657.11(2). On the authority of our *Bormann* decision, the district court held this statute violated the Fifth Amendment to the United States Constitution and article I, section 18 of the Iowa Constitution. We review the district court's decision on this constitutional issue de novo. *Home Builders Ass'n v. City of West Des Moines*, 644 N.W.2d 339, 344 (Iowa 2002).

A. *Applicability of* Bormann. The parties dispute whether *Bormann* is controlling, so we turn to that issue first. In *Bormann*, we held the nuisance immunity provided in Iowa's agricultural land preservation statute, Iowa Code section 352.11(1)(a) (1993), was unconstitutional under the Takings Clause of the federal constitution and article I, section 18 of the Iowa Constitution. 584 N.W.2d at 321. In that case, the county board of supervisors had approved the application of several landowners to declare an agricultural area in the county. *Id.* at 311–12. This designation gave the applicants the benefit of the immunity provided in section 352.11(1)(a), which stated in part:

> A farm or farm operation located in an agricultural area shall not be found to be a nuisance regardless of the established date of operation or expansion of the agricultural activities of the farm or farm operation.

Iowa Code § 352.11(1)(a) (1993). Neighbors of the applicants challenged the board's action in district court without success. *Bormann*, 584 N.W.2d at 312.

On appeal, we held section 352.11(1)(a) created "an easement in the property affected by the nuisance ... in favor of the applicants' land ... because the immunity allows the applicants to do acts on their own land which, were it not for the easement, would constitute a nuisance." *Id.* at 316. We concluded such "[e]asements are property interests subject to the just compensation requirements of the Fifth Amendment ... and [the Iowa] Constitution." *Id.* Therefore, we held, the Board's

action triggering the nuisance immunity "amount[ed] to the taking of private property for public use without the payment of just compensation." *Id.* at 321.

Pork Xtra claims that *Bormann* is not controlling here because the statutory immunity at issue in this case is not as broad as that at issue in *Bormann.* The defendant points out that section 657.11(2) does not apply upon proof that

(1) The animal feeding operation unreasonably and for substantial periods of time interferes with the person's comfortable use and enjoyment of the person's life or property. [and]

(2) The animal feeding operation failed to use existing prudent generally accepted management practices reasonable for the operation.

Iowa Code § 657.11(2)(*b*). Pork Xtra argues that the introduction of "the concept of reasonableness" indicates that section 657.11(2) is not a complete defense to nuisance actions and therefore is not subject to the same infirmities as the immunity found in the agricultural land preservation statute, section 352.11(1)(*a*). We do not agree that section 657.11(2) is distinguishable from section 352.11(1)(*a*) on this basis.

As we noted in *Bormann,* the nuisance immunity granted in section 352.11(1)(*a*) does not apply when the nuisance arises "from the negligent operation of the farm or farm operation." *Bormann,* 584 N.W.2d at 314 (citing Iowa Code section 352.11(1)(*b*)). We think the exception to immunity provided in section 657.11(2)(*b*) for the failure "to use existing prudent generally accepted management practices *reasonable* for the operation" is analogous to a negligence standard. Iowa Code § 657.11(2)(*b*) (emphasis added). Therefore, since the negligence exception to the immunity afforded by section 352.11(1)(*a*) did not preclude that statute from exacting

a taking under our analysis in *Bormann,* the reasonable-and-prudent-management-practices exception contained in section 657.11(2)(*b*) likewise does not prevent the immunity afforded by that statute from constituting a taking. Thus, for purposes of applying our analysis in *Bormann,* we do not think the statutory nuisance immunity of section 657.11(2) is distinguishable from the nuisance immunity of section 352.11(1)(*a*). We turn then to the defendant's alternative argument: that *Bormann* is incorrect and should be overruled.

B. *Continued vitality of* Bormann. The defendant contends this court erred in applying a per se takings analysis in *Bormann* rather than analyzing the statutory immunity as a regulatory taking. The applicants in *Bormann* made the same argument, asserting "the court must apply [the] balancing test" of *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). *Bormann,* 584 N.W.2d at 313. We rejected this suggestion in *Bormann,* concluding that the granting of an easement in private property without compensation was a violation of the state and federal constitutions regardless of the legitimate state interests advanced by the grant of nuisance immunity. *Id.* at 321.

The defendant criticizes this holding, arguing that because there was no physical invasion of the plaintiffs' property—no trespass—a per se takings analysis was inappropriate. Although this court discussed the various scenarios involving trespassory and nontrespassory invasions in *Bormann,* our ultimate conclusion was simply that the immunity statute created an easement and the appropriation of this property right was a taking. Whether the nuisance easement created by section 657.11(2) is based on a physical invasion of particulates from the confinement facilities or is viewed as a nontrespassory invasion

akin to the flying of aircraft over the land, it is a taking under Iowa's constitution. We decline to retreat from this view.

Our conclusion with respect to the plaintiffs' state constitutional challenge to section 657.11(2) makes it unnecessary to determine whether this statute also violates the federal Takings Clause. Thus, we need not reevaluate whether the federal per se takings analysis or the regulatory takings analysis should be applied for purposes of determining whether the statute is constitutional under the Fifth Amendment.

### III. *Scope of Takings Remedy.*

Pork Xtra argues that even if the statutory immunity violates the Takings Clause, it is unconstitutional only to the extent that it prohibits a remedy for the actual taking of the plaintiffs' property. Under this argument, it contends, immunity granted from liability for damages other than the just compensation required by the constitution would not be prohibited. Thus, asserts the defendant, while it may be liable for damages for the diminution in value of the plaintiffs' property, it has immunity from any other damages arising from its animal feeding operation unless the plaintiffs prove one of the statutory exceptions to the nuisance immunity.

We first note that Iowa Code section 4.12 supports the underlying premise of the defendant's argument: section 657.11(2) may be enforced to the extent it operates constitutionally. Section 4.12 states:

> If any provision of an Act or statute or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the Act or statute which can be given effect without the invalid provision or application, and to

this end the provisions of the Act or statute are severable.

Iowa Code § 4.12. We have held that

> [s]everance of unconstitutional provisions from constitutional portions of a statute is appropriate if it does not substantially impair legislative purpose, the enactment remains capable of fulfilling the apparent legislative intent, and the remaining portion of the enactment can be given effect without the invalid provision.

*Clark v. Miller,* 503 N.W.2d 422, 425 (Iowa 1993); *accord City of Council Bluffs v. Cain,* 342 N.W.2d 810, 815 (Iowa 1983) ("The question is whether there remains a viable statute expressive of legislative intent."). Thus, the question here is twofold: (1) whether there is any immunity bestowed by section 657.11(2) that does not violate the Takings Clause; and if so, (2) whether this immunity is a viable expression of legislative intent such that it may be given effect in the absence of the unconstitutional application of the statutory immunity.

In determining whether any application of section 657.11(2) is constitutional, we must initially identify what compensation would be required for the taking effected by this statute. As we have stated, the taking that occurs by operation of the statutory immunity is the granting of an easement in the property burdened by the animal feeding operation. The standard of compensation required for the taking of an easement is "the decrease in value of the dominant estate ... resulting from the taking of the easement." 26 Am.Jur.2d *Eminent Domain* § 385, at 790 (1996); *accord Dolezal v. City of Cedar Rapids,* 209 N.W.2d 84, 88 (Iowa 1973) (determining damages for city's condemnation of a clearance easement over private property to allow planes to approach landing strip of municipal airport). This decrease is mea-

sured by the difference in fair market value of the property before and immediately after imposition of the easement. *See Dolezal,* 209 N.W.2d at 88; 26 Am. Jur.2d *Eminent Domain* § 385, at 790 ("The measurement of this decrease must be derived from an appraisal of the value of the dominant estate before and after the taking.").

Applying these principles to the case before us, we conclude the statutory immunity cannot constitutionally deprive private property owners of compensation for the decreased value of their property due to the statutory imposition of an easement for the operation of an animal feeding operation as a nuisance. Because the recovery of diminution-in-value damages fully compensates the burdened property owners for the unlawful taking of an easement, the restrictions of the Takings Clause end at that point. The Takings Clause does not prohibit limitations on other damages recoverable under a nuisance theory. *Cf. Peel v. Burk,* 197 N.W.2d 617, 619 (Iowa 1972) (holding just compensation required by Takings Clause does not include payment of condemnees' trial preparation expenses, attorney fees, or expert witness fees); *Anderson v. City of Detroit,* 54 Mich.App. 496, 221 N.W.2d 168, 170 (1974) (rejecting takings challenge to sovereign immunity statute, stating "the right to sue for a future tortious injury is not property and may be abrogated by the Legislature").

That leaves only the question whether legislative intent can be given effect by a limited application of the nuisance immunity granted by section 657.11(2). We think it can. The general assembly sought "to protect and preserve animal agricultural production operations" in Iowa by sheltering them from the costs of nuisance lawsuits. Iowa Code § 657.11(1). That intent is promoted by giving effect to section 657.11(2) to the extent it is constitutional. In other words, giving animal producers limited immunity from nuisance suits, requiring them to pay only for the value of the easement resulting from their creation of a nuisance, improves their economic position as envisioned by the legislature.

In conclusion, we hold that *Bormann* and state takings jurisprudence requires us to invalidate the statutory immunity only insofar as it prevents property owners subjected to a nuisance from recovering damages for the diminution in value of their property. The Takings Clause does not prohibit the legislature from granting animal feeding operations immunity from liability for any other damages traditionally allowed under a nuisance theory of recovery. Accordingly, the trial court erred in ruling that immunity from nuisance liability was an unconstitutional taking without distinguishing the elements of damage in a nuisance claim from the compensation demanded under the Takings Clause.

This conclusion is not necessarily dispositive of the plaintiffs' claim that section 657.11(2) is unconstitutional, however, as the plaintiffs relied on several constitutional provisions in attacking the statute in the district court, including the Equal Protection Clause and article I, section 1 of the Iowa Constitution. On appeal, the plaintiffs have abandoned their equal protection argument and claim only that the grant of nuisance immunity violates Iowa Constitution article I, section 1. We now consider that contention.

IV. *Section 657.11(2) as a Violation of Iowa's Inalienable Rights Clause.*

■ A. *Governing principles of law.* The first section of the Iowa Constitution's declaration of rights provides:

> All men are, by nature, free and equal, and have certain inalienable rights— among which are those of enjoying and

defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

Iowa Const. art. I, § 1. Based on an understanding that this provision was intended by its drafters to secure common law rights pre-dating the constitution, *see May's Drug Stores v. State Tax Comm'n*, 242 Iowa 319, 329, 45 N.W.2d 245, 250 (1950), the plaintiffs contend the protection provided by this section is absolute and the inalienable rights guaranteed by this clause cannot be legislatively abrogated. Because the protection of one's property from nuisances was a pre-existing common law right, the Gackes argue, the legislature may not constitutionally grant immunity to those creating a nuisance.

This court has acknowledged that the constitutional protection embodied in Iowa's Inalienable Rights Clause "is not a mere glittering generality without substance or meaning." *State v. Osborne*, 171 Iowa 678, 693, 154 N.W. 294, 300 (1915); *see also Hoover v. Iowa State Highway Comm'n*, 207 Iowa 56, 59, 222 N.W. 438, 439 (1928) (stating it was intended that article I, section 1 was "to be enforced by the judiciary"). *See generally* Joseph R. Grodin, *Rediscovering the State Constitutional Right to Happiness and Safety*, 25 Hastings Const. L.Q. 1, 22 (1997) (stating "most courts have assumed that the inalienable rights clauses have some judicially enforceable content"). We have held this provision was intended to secure citizens' pre-existing common law rights (sometimes known as "natural rights") from unwarranted government restrictions. *May's Drug Stores*, 242 Iowa at 329, 45 N.W.2d at 250. These rights include the "right to acquire, possess, and enjoy property." *Osborne*, 171 Iowa at 695, 154 N.W. at 301.

■■ On the other hand, we have not interpreted the protection of the Inalienable Rights Clause to be absolute. The rights guaranteed by this provision are subject to reasonable regulation by the state in the exercise of its police power. *See Gibb v. Hansen*, 286 N.W.2d 180, 186 (Iowa 1979) (stating liberty as used in article I, section 1 " 'implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community' " (citation omitted)); *May's Drug Stores*, 242 Iowa at 329, 45 N.W.2d at 250 ("The property rights preserved by [this] provision are subject to the higher law and greater right known as the public welfare."); *Benschoter v. Hakes*, 232 Iowa 1354, 1361, 8 N.W.2d 481, 485 (1943) (holding "legislation is not vulnerable to ... attack [under article I, section 1] if it can be said to be a reasonable exercise of the police power"); *Osborne*, 171 Iowa at 693, 154 N.W. at 300 (holding constitutional right to possess and enjoy property is subject to state's reasonable regulation). As this court noted in *May's Drug Stores*, " 'The police power is an incident of title to private property, and it is no objection to its reasonable exercise that private property is impaired in value or otherwise adversely affected.' " 242 Iowa at 329, 45 N.W.2d at 250 (quoting 16 C.J.S. *Constitutional Law* § 209 (now substantially found at 16A C.J.S. *Constitutional Law* § 508, at 616–17 (1984))). Thus, in determining whether the challenged statute violates article I, section 1 of the Iowa Constitution, we must determine (1) whether the right asserted by the plaintiffs is protected by this clause, and (2) whether section 657.11(2) is a reasonable exercise of the state's police power. *See Steinberg–Baum & Co. v. Countryman*, 247 Iowa 923, 929–30, 77 N.W.2d 15, 18–19 (1956).

■ Our analysis is grounded on a presumption that the statute is constitutional. *Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995). The Gackes, as the persons challenging the statute, bear the burden to rebut this presumption by establishing the unreasonableness of the statutory provision. *Kempf v. City of Iowa City*, 402 N.W.2d 393, 399 (Iowa 1987); *Steinberg–Baum & Co.*, 247 Iowa at 931–32, 77 N.W.2d at 20. Although this court must examine the reasonableness of the challenged legislative action, we do not concern ourselves with the wisdom of the policy decisions underlying the statute. *See Anderson v. City of Cedar Rapids*, 168 N.W.2d 739, 742 (Iowa 1969).

B. *Existence of protected right.* We first consider whether the Gackes' desire to enjoy their home free from noxious odors is a right protected by article I, section 1 of the Iowa Constitution. This clause states that one of the inalienable rights accorded citizens is "acquiring, possessing and protecting property." Iowa Const. art. I, § 1. Property consists not only of the physical land, but also "the rights of use and enjoyment." *Liddick v. City of Council Bluffs*, 232 Iowa 197, 221–22, 5 N.W.2d 361, 374 (1942); *accord Osborne*, 171 Iowa at 695, 154 N.W. at 301 ("The first section of our Bill of Rights assures to every man protection in his natural right to acquire, possess, and enjoy property."). Therefore, the plaintiffs' right to possess their property includes their right to use and enjoy it. *See Osborne*, 171 Iowa at 693, 154 N.W. at 300 ("Depriving an owner of property of one of its essential attributes is depriving him of his property within the constitutional provision [article I, section 1].").

■ C. *Reasonableness of statute as an exercise of police power.* This conclusion brings us to the second matter for consideration: did the state reasonably exercise its police power by sanctioning a livestock producer's interference with the plaintiffs' use and enjoyment of their land? "Police power refers to the legislature's broad, inherent power to pass laws that promote the public health, safety, and welfare." *Gravert*, 539 N.W.2d at 186. In *Gravert*, this court examined the constitutionality of Iowa's partition fence statute under article I, section 1. *Id.* We applied the following "highly deferential standard of review" in deciding whether the legislature had constitutionally exercised its police power:

> "To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals."

*Id.* (citation omitted); *see also Steinberg–Baum & Co.*, 247 Iowa at 929, 77 N.W.2d at 19 ("restrictions that are prohibitive, oppressive or highly injurious ... are invalid"); *Benschoter*, 232 Iowa at 1361, 8 N.W.2d at 485 ("In each case it is a question whether or not the collective benefit outweighs the specific restraint."); *Osborne*, 171 Iowa at 693, 154 N.W. at 300 (stating article I, section 1 includes "the right to pursue a useful and harmless business *without the imposition of oppressive burdens* by the lawmaking power" (emphasis added)). We now apply these principles to the statute at issue here.

The general assembly included a statement of purpose when it enacted the nuisance immunity statute challenged in the present case. That statement provides:

> The purpose of this section is to protect animal agricultural producers who manage their operations according to state and federal requirements from

the costs of defending nuisance suits, which negatively impact upon Iowa's competitive economic position and discourage persons from entering into animal agricultural production. This section is intended to promote the expansion of animal agriculture in this state by protecting persons engaged in the care and feeding of animals. The general assembly has balanced all competing interests and declares its intent to protect and preserve animal agricultural production operations.

Iowa Code § 657.11(1). The legislature's objective of promoting animal agriculture in this state promotes the interests of the public generally and the immunity granted in this statute bears a reasonable relationship to this legislative objective. Therefore, even though individual producers are the direct beneficiaries of the statutory immunity, we think this provision is within the police power of the state. *See Benschoter,* 232 Iowa at 1364, 8 N.W.2d at 487 (concluding statute intended to address problems with farm tenancies was "in the interest of the general public [and] within the sphere of the state's police power"). This court reached a similar conclusion in *Gravert,* where we stated that "a law may serve the public purpose although it benefits certain individuals or classes more than others." 539 N.W.2d at 188.

We now consider whether the means adopted by the legislature to accomplish its objective were "reasonably necessary" and not "unduly oppressive." *Id.* at 186; *see also Gibb,* 286 N.W.2d at 188 (employing a balancing test under article I, section 1, weighing public interest against burden on individual). In evaluating section 657.11(2) under this standard, we think it helpful to examine our decision in *Gravert* in more detail. In that case the plaintiffs claimed the fencing statute was unduly oppressive in its application to them because it required them to expend

substantial sums of money to maintain and repair their portion of a partition fence, yet they obtained no benefit from it, as their property was subject to restrictions against the raising of livestock. *Gravert,* 539 N.W.2d at 185, 188. We noted that "[a] law does not become unconstitutional because it works a hardship" or because it requires substantial monetary expenditures for compliance. *Id.* at 188. In addition, we concluded the plaintiffs personally benefited from the partition fence because it protected their crops from the adjoining landowner's horses. *Id.* Under these circumstances, we held the plaintiffs had not shown the fence statute was unduly oppressive. *Id.*

The present case, while similar, has some important distinguishing characteristics. Notably, the Gackes receive no particular benefit from the nuisance immunity granted to their neighbors other than that inuring to the public in general. Moreover, they sustain significant hardship. The Gackes resided on their property long before any animal operation was commenced across the road and had spent considerable sums of money in improvements to their property prior to construction of the defendant's facilities. Such facts have been considered relevant in analogous situations to determine whether the government has constitutionally exercised its police power. For example, in challenges to zoning regulations one aspect of the analysis employed to decide whether the government's use of the police power is constitutional is whether the person whose property is adversely affected has any vested rights: "'legitimate and valuable expenditures in connection with the use of an affected tract or business conducted on it, before imposition of the regulation, may create a property right which cannot be arbitrarily interfered with or taken away without just compensation.'" *Kempf,* 402

N.W.2d at 400 (citation omitted). This court has also found it important in substantive due process analysis to consider whether the effect of a statute is "to give an injured person, in essence, no right of recovery." *See Shearer v. Perry Cmty. Sch. Dist.*, 236 N.W.2d 688, 692 (Iowa 1975), *overruled on other grounds by Miller v. Boone County Hosp.*, 394 N.W.2d 776, 781 (Iowa 1986).

We think these same factors are relevant to our evaluation of the constitutionality of section 657.11(2) under the Inalienable Rights Clause. Application of these considerations here reveals the oppressive effect of the statutory immunity, a consequence that distinguishes this case from those where the plaintiffs are simply adversely affected by the statute. *See May's Drug Stores*, 242 Iowa at 329, 45 N.W.2d at 250 (stating regulation is not unreasonable simply because "private property is impaired in value or otherwise adversely affected"). Property owners like the Gackes bear the brunt of the undesirable impact of this statute without any corresponding benefit. Moreover, their right to use and enjoy their property is significantly impaired by a business operated as a nuisance, yet they have no remedy. Unlike a property owner who comes to a nuisance, these landowners lived on and invested in their property long before Pork Xtra constructed its confinement facilities. Under these circumstances, the police power is not used for its traditional purpose of insuring that individual citizens use their property "with due regard to the personal and property rights and privileges of others." *May's Drug Stores*, 242 Iowa at 329, 45 N.W.2d at 250–51. Instead, one property owner—the producer—is given the right to use his property *without* due regard for the personal and property rights of his neighbor. We conclude that section 657.11(2) as applied to the Gackes is unduly oppressive and,

therefore, not a reasonable exercise of the state's police power. Accordingly, the statutory immunity violates article I, section 1 of the Iowa Constitution and may not be relied upon as a defense in this case. We express no opinion as to whether the statute might be constitutionally applied under other circumstances.

### V. *Sufficiency of the Evidence.*

■ The defendant claims on appeal that the evidence was insufficient to prove a nuisance in two ways. First, it asserts the trial court failed to consider the nature of the neighborhood in determining whether the defendant had created a nuisance. In addition, Pork Xtra contends the trial court failed to use an objective standard in determining whether a nuisance exists, but rather relied on the Gackes' subjective sensations. We will address each contention separately after setting out the standards governing our review.

■ When a party challenges the sufficiency of the evidence to support the factual findings made by the district court in a bench trial, we must examine the record for substantial evidence in support of the challenged findings. *Benjamin v. Lindner Aviation, Inc.*, 534 N.W.2d 400, 404 (Iowa 1995). "In assessing the evidence, we view the record in the light most favorable to the plaintiffs, taking into consideration all reasonable inferences that may fairly be made." *Boham v. City of Sioux City*, 567 N.W.2d 431, 435 (Iowa 1997).

■ A. *Consideration of nature of the neighborhood.* The existence of a nuisance depends on "priority of location, the nature of the neighborhood, and the wrong complained of." *Weinhold v. Wolff*, 555 N.W.2d 454, 459 (Iowa 1996). The defendant criticizes the trial court for failing to consider the nature of the neighborhood in deciding whether Pork Xtra's facilities

were a nuisance. It points out the evidence showed there were at least thirteen separate hog confinement buildings within two miles of the Gackes' residence.

It is true the district court, although citing the three-factor test from *Weinhold*, made no factual findings or conclusions relating to the nature of the neighborhood and the effect of this factor on the court's analysis. Nonetheless, even if we were to conclude the court, by ignoring this factor, failed to apply the proper test, the court's error would not entitle the defendant to a verdict in its favor. Accepting the defendant's underlying conclusion that its confinement operation was a customary enterprise in the neighborhood, we cannot say this favorable factor, which is only one of three that must be considered, mandates a conclusion that the defendant's facilities were not a nuisance. Clearly, the plaintiffs had priority of location and, as we discuss next, there was substantial evidence of interference with the plaintiffs' use and enjoyment of their property as a result of the defendant's hog operation. Therefore, we cannot say the evidence was insufficient to support the court's ruling that the defendant's facilities were a nuisance.

At most, the court's incomplete analysis would require that we remand the case for retrial or for application of the correct analysis under the present record. Because we determine later in this opinion that Pork Xtra is entitled to a new trial based on the improper admission of hearsay evidence, we need not consider this matter any further. We trust that on retrial the district court will give appropriate consideration to all three factors in determining whether the plaintiffs have established the existence of a nuisance.

■ B. *Use of objective standard.* "A fact finder uses the normal person standard to determine whether a nuisance

involving personal discomfort or annoyance is significant enough to constitute a nuisance." *Weinhold,* 555 N.W.2d at 459. The defendant argues the trial court primarily relied on the Gackes' subjective recording of offensive odors, which was not consistent with the "objective, scientific" analysis conducted by the defendant's expert witness. When a purely objective standard is applied, argues Pork Xtra, it becomes apparent that the plaintiffs' proof of the allegedly intolerable conditions created by the defendant's facilities was insufficient. We find no merit in this assignment of error.

In its initial ruling after trial, the court referenced only the plaintiffs' record of the odors coming from the defendant's operation to support the court's finding that the defendant's facilities emitted noxious odors that were unreasonably offensive. In its ruling on post-trial motions, however, it expanded and clarified its findings, stating:

> The testimony of the plaintiffs *and of the witnesses they presented* convinced the court that normal persons would be and were substantially annoyed and disturbed by the condition existing and that it was not any unusual idiosyncrasy of the plaintiffs or their witnesses which made the situation significantly offensive for persons situated as are the plaintiffs.

(Emphasis added.) Based on these findings, we conclude the court considered evidence beyond the subjective sensations of the plaintiffs themselves.

In addition, we think the record reveals substantial evidence to support the court's finding that the confinement operation released odors that were unreasonably offensive to normal persons. Lay witnesses and expert witnesses, in addition to the plaintiffs, testified to the level of odor coming from Pork Xtra's facilities and to the offensiveness of this odor. Therefore, we

reject the defendant's claim that the evidence is insufficient to support the trial court's finding of a nuisance.

## VI. *Admission of Hearsay Evidence.*

We now review the district court's decision to admit questionnaires completed by persons who did not testify at trial and to allow nondeclarant witnesses to testify with respect to the content of these questionnaires. The defendant claims this evidence was hearsay and erroneously admitted.

Prior to trial, the plaintiffs circulated questionnaires to various individuals who had been on or around the plaintiffs' property concerning the odors emanating from the defendant's confinement facilities. Twenty-three completed questionnaires were admitted at trial over the defendant's hearsay objection. The defendant also objected to the testimony of various witnesses concerning the content of these questionnaires, but again its objections were overruled. These rulings are assigned as reversible error on appeal. We review the trial court's decision to admit this evidence for the correction of errors of law. *See Brooks v. Holtz,* 661 N.W.2d 526, 530 (Iowa 2003).

■ A. *Error preservation.* Initially, we address the plaintiffs' assertion that error was waived because the defendant did not object to the testimony of Norman DeWit, one of Pork Xtra's managers who had been called to testify by the plaintiffs. The plaintiffs asked DeWit whether he had an opportunity to review the "odor questionnaires," and DeWit said that he had "looked through them briefly." DeWit then agreed "they described a pretty serious odor problem."

DeWit's testimony was preceded by the plaintiffs' counsel's examination of Douglas Matthies and Dr. Daniel Heinemann. Both gentlemen testified they had re-viewed the questionnaires. The plaintiffs asked Matthies whether "the individuals who signed those statements [were] complaining about some pretty severe odor." After the defendant's hearsay objection was overruled, the witness responded, "In their opinion, yes." Heinemann, an expert witness, was permitted to testify over the defendant's hearsay objection that the persons answering the questionnaires reported they had trouble breathing.

This court has long held the view that "once a proper objection has been urged and overruled, it is not required that repeated objections be made to questions calling for the same type of evidence." *Nepple v. Weifenbach,* 274 N.W.2d 728, 732 (Iowa 1979); *accord State v. Kidd,* 239 N.W.2d 860, 863 (Iowa 1976) ("Repeated objections need not be made to the same class of evidence."); *State v. Miller,* 204 N.W.2d 834, 841 (Iowa 1973) (" 'The repetition of an objection is needless where the same or similar evidence, already duly objected to, is again offered....' " (Citation omitted.)). Here Pork Xtra's attorney had previously objected to two witnesses' testimony concerning the contents of the questionnaires and these objections had been overruled by the trial court. The defendant was not required to repeat its objection when DeWit was questioned concerning the content of the same questionnaires. Therefore, error was not waived.

■ B. *Admission of questionnaires.* We first consider the propriety of the court's admission of the questionnaires as exhibits. Our rules of evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(*c*). The plaintiffs did not contest at trial, nor do they on appeal, that the questionnaires contain statements

that were not made by the declarants while testifying at trial or at another hearing. Rather, they assert these exhibits were not offered to prove the truth of the matters asserted in the questionnaires, but rather to show that the defendant was put on notice of a problem.

■ We have held that "a statement that would ordinarily be deemed hearsay is admissible if it is offered for a non-hearsay purpose *that does not depend upon the truth of the facts presented.*" *McElroy v. State,* 637 N.W.2d 488, 501 (Iowa 2001) (emphasis added). Thus, the evidence must have "value independent of the truth of the matter asserted in the statement." *Id.* at 502. If the hearsay statement must be believed for the evidence to be relevant to the case, then it is being offered for the truth of the matter asserted and is inadmissible hearsay. *State v. Horn,* 282 N.W.2d 717, 724 (Iowa 1979); David P. Leonard, *The New Wigmore: A Treatise on Evidence* § 1.6.1, at 1:16 (2001) (stating when "the relevancy of the evidence depends on whether [the] extra-judicial statement ... was in fact true[, the] statement [is] hearsay, and in the absence of any exception ..., it would be inadmissible"); 2 John W. Strong, *McCormick on Evidence* § 249, at 102 (5th ed.1999) (noting a statement is not offered for a hearsay purpose *if* "its value does not depend on its truth").

Here, the plaintiffs claim that the questionnaires, which were given to the defendant during the course of discovery, put the defendant on notice of an odor problem and rendered the defendant's subsequent failure to take remedial action unreasonable. One of the flaws in this argument is that the reasonableness of the defendant's inaction is dependent on whether an odor problem actually existed. In other words, if the statements made by the questionnaire respondents that there were severe

odors coming from the defendant's facilities were untrue, the defendant's inaction would not be unreasonable. Thus, the probative value of the questionnaire statements depends on the truth of those statements. As such, the questionnaires are being offered for the truth of the matter asserted because only if the matter asserted is true do the statements establish the ultimate fact the plaintiffs seek to prove, namely, the unreasonableness of the defendant's conduct. Therefore, the questionnaires are hearsay.

The general rule is that hearsay is not admissible unless permitted by the constitution, statute, or other rule. *See* Iowa R. Evid. 5.802. The only basis for admission cited by the plaintiffs (other than their claim the questionnaires were not hearsay) is the exception recognized for hearsay evidence upon which an expert relies. *See* Iowa R. Evid. 5.703. In addition, the Gackes assert any error in the admission of this evidence was not prejudicial. We turn first to the admission of this evidence under rule 5.703.

■ C. *Testimony of expert witnesses concerning content of questionnaires.* Iowa Rule of Evidence 5.703 provides that an expert may base his or her opinion on facts or data that are not admissible in evidence so long as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Thus, "experts may base their opinions on hearsay." *City of Dubuque v. Fancher,* 590 N.W.2d 493, 496 (Iowa 1999). If the trial judge determines the hearsay is "reasonably relied upon" by experts as required by the rule, the court has discretion to admit the underlying hearsay evidence. *Brunner v. Brown,* 480 N.W.2d 33, 37 (Iowa 1992).

In the case before us, two of the plaintiffs' expert witnesses, Dr. Heinemann and Dr. Miner, testified they had reviewed the questionnaires in forming their opinions and the information provided was of the type reasonably relied upon by experts in their field. Dr. Heinemann was then permitted to testify that some of the persons responding to the questionnaires said they had trouble breathing. Dr. Miner testified he relied on the questionnaires to document the existence and frequency of the odor problem.

Based on this testimony, the trial court had discretion to allow these witnesses to testify to the content of the questionnaires and to admit the questionnaires themselves into evidence, but only to the extent they provided a basis for the experts' opinions. The problem with the wholesale admission of the questionnaires here is that the questionnaires addressed matters that went far beyond the documentation of odors and breathing problems upon which the experts relied. Individuals completing the questionnaires not only described the odor they experienced, but also answered questions asking for their "opinion as to the origin of the odor," as well as "any other information concerning . . . the persons responsible that [the responding individuals thought] might be important." The testimony of the experts provides no basis for the admission of this evidence.

The other weakness in the plaintiffs' assertion that rule 5.703 supports admission of the questionnaires is the fact that evidence admitted under this rule is admitted for the limited purpose of showing the basis for the expert witnesses' opinions; it is not admissible as substantive evidence of the matters asserted therein. *See Fancher*, 590 N.W.2d at 496; *Brunner*, 480 N.W.2d at 37; *In re Estate of Kelly*, 558 N.W.2d 719, 723 (Iowa Ct. App.1996); *C.S.I. Chem. Sales, Inc. v.*

*Mapco Gas Prods., Inc.*, 557 N.W.2d 528, 531 (Iowa Ct.App.1996). Here, it is clear that the evidence was offered by the plaintiffs and admitted by the court as substantive evidence.

We conclude the court erred in admitting the questionnaires as substantive evidence. In addition, we hold the trial court abused its discretion in admitting the entirety of the questionnaires when only a portion of each questionnaire provided facts and data upon which the experts relied in forming their opinions. We now consider whether the erroneous admission of the questionnaires was prejudicial to Pork Xtra.

D. *Prejudice.* "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ." Iowa R. Evid. 5.103(*a*). The admission of hearsay evidence "is presumed to be prejudicial error unless the contrary is affirmatively established." *Frunzar v. Allied Prop. & Cas. Ins. Co.*, 548 N.W.2d 880, 887 (Iowa 1996). The plaintiffs make two arguments to support their claim of no prejudice: (1) similar information was properly admitted through the testimony of two of the Gackes' expert witnesses; and (2) the district court as fact finder "is able to compartmentalize evidence and use it only for the purposes received." We find no merit in either argument for the reasons already discussed.

The questionnaires were not cumulative of the testimony of the expert witnesses. *See Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 88 (Iowa 2002) (stating " 'where *substantially the same* evidence is in the record, erroneously admitted evidence will not be considered prejudicial' " (citation omitted and emphasis added)). They included statements, information, and opinions for which no foundation had been laid under rule 5.703. *Cf.*

*In re Estate of Kelly,* 558 N.W.2d at 722 (holding admission of hearsay memorandums was prejudicial because they "contained matters far beyond the facts established by other evidence"). Moreover, some of the gratuitous comments made by the individuals responding to the questions were inflammatory and clearly prejudicial.

In addition, the district court had no reason to "compartmentalize" this evidence as the plaintiffs suggest, as the court did not consider the questionnaires to be hearsay and admitted them as substantive evidence. Therefore, there is no support in the record for the proposition that the court limited its reliance on the questionnaires.

Finally, we also point out the critical nature of the erroneously admitted evidence. A primary dispute at trial was the character and extent of the odor problem emanating from the defendant's facilities. The inadmissible hearsay evidence directly addressed this central issue. Under these circumstances, admission of the questionnaires cannot fairly be characterized as nonprejudicial. *See Madison v. Colby,* 348 N.W.2d 202, 204 (Iowa 1984) (holding admission of hearsay was prejudicial where it related to a hotly disputed issue). We reject the plaintiffs' contention the evidence was "overwhelming" that the Pork Xtra operation was a nuisance so as to obviate any prejudice from these documents. We hold, therefore, that a substantial right of the defendant was affected by the trial court's error.

E. *Summary.* We conclude the questionnaires were hearsay, as well as the testimony of lay witnesses concerning the contents of the questionnaires. The court erred in concluding otherwise. In addition, although the trial court had discretion to admit the questionnaires to explain the testimony of the experts who had reasonably relied on these documents, the court

abused its discretion by the wholesale admission of this evidence, as the content of these documents went far beyond the information upon which the experts relied. Finally, we conclude the Gackes have failed to rebut the presumption of prejudice flowing from the improper admission of this evidence. Therefore, we reverse and remand for a new trial. *See Madison,* 348 N.W.2d at 204 (granting new trial based on erroneous and prejudicial admission of hearsay).

## VII. *Special Damages.*

█ Although we have decided the judgment in favor of the Gackes must be reversed, we consider the issue raised in their cross-appeal as it will arise at retrial should the district court again find that the defendant has created a nuisance. In the present suit, the plaintiffs sought three items of damages: (1) special damages for the past interference with the use and enjoyment of their property; (2) damages for diminution in the value of their property; and (3) special damages for future interference with the use and enjoyment of their property. The trial court refused to award any damages in the third category, reasoning that its award of damages for past interference and for the decreased value of the property would fully compensate the plaintiffs for damages due to the nuisance. On appeal, the plaintiffs contend the court erred in failing to award future damages.

In *Weinhold,* we held that a nuisance created by a hog confinement operation was permanent where there was no evidence that the operator of the facility intended to close the facility in the foreseeable future. 555 N.W.2d at 463. Because we concluded an abatement order was not practical, we held the plaintiffs could recover all of their past, present, and future damages. *Id.* at 464. In addition, we

determined they could recover the diminution in market value of their property. *Id.* at 466. These principles should govern any determination of damages on retrial of the present case.

On remand, should the trial court conclude Pork Xtra's confinement facilities will be operated indefinitely as a nuisance, the court should award special damages supported by the evidence, past and future, as well as any decreased value of the plaintiffs' property proved by them. Should the evidence show the defendant will abate the nuisance, the plaintiffs' recovery would be limited to their special damages up to the time of abatement and any diminution in the rental value of their property while the nuisance exists. *See Staley v. Sagel,* 841 P.2d 379, 382 (Colo.Ct. App.1992) (holding that if nuisance is abated, special damages stop as of time of abatement and there can be no recovery for diminution in market value of property); *Miller v. Town of Ankeny,* 253 Iowa 1055, 1062, 114 N.W.2d 910, 914 (1962) (holding where nuisance is not permanent but subject to abatement, recovery is limited to diminution in rental value and special damages while nuisance exists).

## VIII. *Conclusion and Disposition.*

The district court did not err in refusing to allow the defendant to assert the immunity defense contained in Iowa Code section 657.11(2). This statute violates article I, section 18 of the Iowa Constitution insofar as it prevents a property owner subjected to a nuisance from recovering the diminished market value of the property. As applied in this case, section 657.11(2) also violates article I, section 1 of the Iowa Constitution because it is an oppressive exercise of the state's police power.

The evidence was sufficient to support the trial court's findings. Therefore, Pork Xtra is not entitled to have judgment entered in its favor.

The trial court erroneously admitted prejudicial hearsay evidence. This error requires that we reverse the judgment entered against the defendant and remand for retrial.

Given our reversal of the trial court's judgment, we do not reach the challenges made by the defendant to the court's determination of damages and award of equitable relief.

**REVERSED AND CASE REMANDED.**

All justices concur except LARSON and WIGGINS, JJ., who take no part.